## SMITH, Admr. v ROSS, et

Ohio Appeals, 2nd Dist, Darke Co

No 560.   Decided May 10, 1939

Murphy & Staley, Greenville, for plaintiff-appellee.

Wilbur D. Spidel, Greenville; Richard E. Hole, Greenville, for defendants-appellants.

### OPINION

By BARNES, J.

The above entitled cause is now being determined as an error proceeding by reason of defendants' appeal from the judgment of the court of common pleas of Darke County, Ohio.

The original action was for recovery of concealed assets and was brought in

the common pleas court, by virtue of §10506-67, GC. The trial court found for the plaintiff and against the defendants in the sum of $1340.18 together with 10% penalty, amounting to $134.01 and also costs of the proceeding. Within statutory time defendants gave notice of appeal.

Defendants, Clara R. Ross and B. H. Ross, were husband and wife. Clara R. Ross was the daughter of George W. Riegle, who died intestate on May 20, 1936, at the age of 89 years.

At the time of his death and for some five or six years previous thereto, he had made his home with the Rosses.

On January 5, 1933, a contract was entered into between George W. Riegle of the party of the first part and Clara Ross and B. H. Ross, parties of the second part, which contract was in the words and figures following:

## "CONTRACT

This contract entered into this 5th day of January, A. D., 1933, by and between George W. Riegle of Greenville, Darke County, Ohio, party of the first part, and Clara Ross daughter of party of the first part and B. H. Ross her husband, also of Greenville, Ohio, parties of the second part;

WITNESSETH, That the said George W. Riegle does hereby agree to continue to live in the home of Clara Ross and B. H. Ross on the same terms as he has heretofore, paying a reasonable amount per week for his board and he does further agree that he will place any and all money and bonds or other securities which he may now own in trust at The Farmers National Bank of Greenville, Ohio, with the understanding that such funds are available to said George W. Riegle during his life in case of necessity, but that such funds are to be the property of his said daughter Clara Ross and her husband B. H. Ross after his death, and that no proceedings in the Probate Court shall be necessary to effect the transfer of such funds and securities, bonds and other valuables to the said Clara Ross and or B. H. Ross.

On the other hand the said parties of the second part do hereby agree with the said George W. Riegle that they will well and truly carry out the following provisions of this contract, namely, they will out of such funds coming to them after the death of said George W. Riegle pay all expenses connected with the funeral of the said George W. Riegle, will pay all the expenses of the last illness of the said George W. Riegle and will further agree to keep monuments, lots and graves of the said George W. Riegle in good presentable condition and make any necessary repairs to the tombstones and markers during the lifetime of both parties of the second part.

Said parties of the second part also agree to properly look after the lots and markers and graves of other children of the said George W. Riegle buried at Ft. Jefferson, during the lifetime of both parties of the second part.

It is further agreed by and between the parties that any funds remaining after the payment of the funeral bills and expenses of last illness shall be the sole property of the said parties of the second part who may realize upon all securities, bonds and valuables and such property and moneys shall be their distributive share of the estate of the said George W. Riegle.

The said George W. Riegle has made advancements of his estate to others who would be the objects of his bounty if he were making a Will.

The said party of the first part does hereby agree to make no further advancements to any others who would be his heirs, and to preserve and conserve the balance of his estate for the benefit of the said parties of the second part who by this contract are agreeing to look after his needs, to furnish him a home and loving care until his end.

IN WITNESS WHEREOF, the parties hereto having hereunto set their respective signatures at Greenville, Ohio, this 5th day of January, A. D. 1933.

WITNESSES ⠀⠀⠀ George H. Riegle
J. Menke ⠀⠀⠀⠀ Clara R. Ross
Thelma L. Lehman⠀ B. H. Ross
STATE OF OHIO:
COUNTY OF DARKE, ss
Before me the undersigned a Notary

Public in and for Darke County, Ohio, personally appeared George W. Riegle, party of the first part, Clara Ross and B. H. Ross, parties of the second part, who acknowledged the signing of the above contract and agreement to be their voluntary act and deed for the purposes therein set out.

In Testimony Whereof, I have hereunto set my hand and Notarial Seal this fifth day of January, A. D. 1933.

Geo. A. Katzenberger

GEO. A. KATZENBERGER.

Notary Public in and for

Darke County, Ohio

My commission expires October 6, 1934."

Also introduced in evidence is a pass book, plaintiff's Exhibit No. 3, in the name of George W. Riegle or Clara R. Ross, the first entry of which is January 4, 1933, balance $1158.62. Continuing entries appear in the book from month to month and year to year, the last pages of charges and entries showing May 29, 1936, balance $1340.18 and on opposite page as charges "June 2 ck. $1340.18" thus closing the account.

The entire controversy resolves itself around the legal effect of Exhibits 2 and 3. The only witnesses called were Floyd Smith who identified as Exhibit 1, letters of administration through which he was acting as fiduciary in the George W. Riegle, Deceased, estate; Clara R. Ross who was called for cross-examination and gave evidence of the relationship between herself and the deceased, the age of her father, identified contract and pass book and other historical facts which may be referred to later, if found important; and Joseph Menke, the cashier of The Farmers National Bank of Greenville, Ohio, who testified that he was called upon to witness the signatures to the contract in the office of attorney, George A. Katzenberger; that the contract was not read in his hearing, nor did he know contents of same until after the death of Mr. Riegle. Mr. Menke also gave evidence that George W. Riegle and his daughter, Clara R. Ross, on or about January 4, 1933, came into the bank to-

gether and Mr. Riegle gave instructions to him to change the account so that either could draw checks and he made out the new pass book and the entry "George W. Riegle or Clara R. Ross" is in his handwriting. The further question was asked Mr. Menke:

"Q. And whether or not anything was said respecting the disposition of the account in the event of the death of either?"

This question was objected to, but the court permitted it to be answered subject to the objection.

"A. If he died the rest of the account should go to Mrs. Ross."

Motion was interposed to rule out the answer but all was received subject to objection.

Upon the final determination of the case, the trial court determined that this evidence was incompetent for the stated reason that its effect would be to change the terms of a written contract.

It is evidently the claim of the administrator that Clara R Ross wrongfully drew out the balance in the joint account following the death of her father, George W. Riegle. However, there is nothing in the pleadings or the transcript of evidence directly supporting this.

The complaint is very general and makes no reference to the account in the bank. No answer was filed nor was any required under the prescribed statutory procedure. Clara R. Ross was not inquired of as to whether or not she withdrew the money from the account following her father's death, nor was any similar inquiry made of the cashier of the bank. Neither does the fact appear through stipulation. There is a total absence of proof of any kind or character, unless it could be determined that the entries on the last two pages of the bank book would present a permissible inference that the balance was withdrawn by Mrs. Ross. These two pages show nothing more than that the bank book was balanced. Apparently it

was balanced on June 2, by ck for $1340.18.

This may mean that the check was issued that day or it may mean the date that the bank officials made the entry so as to balance the account. It might have been drawn by Mr. Riegle, the deceased, and even cashed before his death and the book not balanced until June 2nd. It is unnecessary to point out all the possibilities. Suffice it to say that there is an absolute absence of proof of an essential element in the case.

Another strange coincidence is that counsel for defendants do not refer to this failure of proof in their briefs, although in presenting evidence and after plaintiff had closed, there was a general reference to this failure and brought about the opening up and presentation of further testimony, but even then this particular question was not covered.

We will venture the guess that the facts are so well known to counsel on both sides that they have overlooked the necessity of presenting evidence. In our review of cases, we find this frequently happens. We believe it worthwhile to accept this opportunity to admonish counsel in this case, as well as others who may read the opinion, to adopt the universal practice of carefully going through the pleadings before the day of trial and making a memorandum of the essential elements of the case necessary to be proved.

Since the briefs of counsel do not refer to this question, we intend to pass it for the present and will proceed to further consider the issues on the theory that Mrs. Ross drew out, following her father's death, the balance in the account and appropriated the same to her own use.

The theories of opposite counsel may be eptomized as follows:

It is the claim of the administrator and his counsel that while Mrs. Ross might have drawn money from the account during the life of her father, George W. Riegle, that right terminated at the date of his death and that since no part of the deposit was con-

tributed to by Mrs. Ross, and all was originally the money of Mr. Riegle, that she would have no interest therein after his death. Further that neither the contract or deposit book, either separately or together, would create any right to withdraw the deposit account following the death of George W. Riegle.

Counsel for the Rosses base their claim of right to the deposit account on the theory of a trust created by the contract. More specifically it is pointed out that plaintiff's Exhibit 2 being a contract founded upon a valuable consideration contained the express provision that George W. Riegle "will place any and all money and bonds or other securities which he may now own in trust at The Farmers National Bank of Greenville, Ohio, with the understanding that such funds are available to said George W. Riegle during his life in case of necessity, but that such funds are to be the property of his said daughter, Clara Ross and her husband B. H. Ross after his death,"; that the bank deposit book, Exhibit No. 3, shows a consummation of such arrangement and that even though the right of succession was not entered on the pass book, yet such was the intention of the parties, claimed to be demonstrated by the contract as well as the oral statement to Mr. Menke, cashier of the bank.

Plaintiff's reply to this contention of counsel for defendant is, first, that the deposit account having been made at the bank as a joint account the day previous to the execution of the contract, they are entirely separable and it could not be properly determined that the entries in the bank book were an intended consummation of the provisions of the contract; second, that the bank book being made out as a joint account and not as a joint and survivorship account, the rights of the respective parties terminate at the death of either and thereafter Mrs. Ross would have no right to any part of the account for the reason that she contributed nothing to the deposits. Further that the nature of this account could not be changed by parole for that reason the testimony of the cashier, Menke,

was incompetent and that the trial court was correct in so ruling.

Another question argued pro and con and also referred to by the trial court is whether or not defendants, alleged claim to the fund arises upon the theory of a gift or theory of contract. We have no hesitancy in determining that defendants' claim must arise by reason of contract or not at all. In American Jurisprudence under title of Banks, Sec. 426, et seq., it is stated that cases involving deposits in the names or two persons are determined upon four theories: (1) Gift theory (2) Trust theory (3) Joint tenancy and (4) Contract theory.

Of course, in the instant case the contract is in support of the trust theory.

Defendants in the trial court and in this court make the contention that the lower court was without jurisdiction to determine the equitable question of the trust involved or to declare the contract invalid for the reason that the action is a special probate proceeding and that in such proceeding the court would not have the power to consider equities or determine title. In support of this contention the case of **Halloran v Merrit, Admr., 48 Oh Ap 135** is cited. The cited case was decided in April, 1926, under then existing §10673 GC. In January 1, 1932, the section was amended and is now §10506-73, GC. Under the amendment the following clause was added to the old section:

"The Court shall have authority to cite into Court all persons who claim any interest in the assets alleged to have been concealed, embezzled, conveyed or held in possession, and at such hearing shall have authority to hear and determine questions of title relating to such assets."

In the final analysis the question of title is the ultimate question to be determined. Furthermore, under the New Probate Code, courts of probate are given equitable jurisdiction wherever necessary to be invoked in order to grant full relief in any matter properly before the court.

We determine that the trial court had jurisdiction to hear and determine the controversy.

We now proceed to the main question. Counsel representing the respective parties have aided us with comprehensive briefs. We have made a very careful study of each and every case cited. In examining these cases, we have given particular attention to the date of the decision and the particular facts under which the court made its pronouncement. The date is important for the reason that the legislature on April 29, 1921, amended §8617, which materially modified the rule in Ohio relative to trusts. The pertinent provision of this section reads as follows:

"* * * but the creator of a trust may reserve to himself any use of power, beneficial or in trust, which he might lawfully grant to another, including the power to alter, amend or revoke such trust, and such trust shall be valid as to all persons, except that any beneficial interest reserved to such creator shall be subject to be reached by the creditors of such creator, and except that where the creator of such trust reserves to himself for his own benefit a power of revocation, a court of equity, at the suit of any creditor or creditors of the creator, may compel the exercise of such power of revocation so reserved, to the same extent and under the same conditions that such creator could have exercised the same."

Following this amendment the first case to reach the Supreme Court of Ohio was that of **Union Trust Company v Hawkins, 121 Oh St 159.** The writer of this opinion happened to be the Judge trying this case, under special assignment in the Court of Common Pleas of Cuyahoga County and as a result is very familiar with this case in all its aspects. The decision of the trial court was affirmed in the Court of Appeals and by the Supreme Court, but

on application for rehearing the latter court not only reversed the lower courts but also its own holdings. Regardless of whether or not I still retain my original views as to what the law ought to be, I graciously yield to the determination of the Supreme Court as to what the law is. The third syllabus in the case reads as follows:

"3. The amendment of §8617, GC, effective August 14, 1921, authorizes a trust agreement, including the power to alter, amend or revoke the trust, and by virtue of that amendment a trust agreement making a transfer or conveyance of property including such power and to take effect at the death of the creator of the trust, will effect such transfer and conveyance, although the instrument be not executed in conformity with the law of wills."

The statement of the case is too long to incorporate in this opinion but should be read in connection herewith. Suffice it to say that the beneficiary's interest was based on a gift pure and simple and, in no sense, by contract.

A very recent case dealing with this same situation is **Cleveland Trust Company, Trustee, Appellee v White, et, Appellants, 134 Oh St 1**, also found in **Ohio Bar** under date of June 6, 1938. Syllabus 2 in this case reads as follows:

"2. A voluntary trust in praesenti, otherwise valid, is not rendered nugatory because the settlor reserves to himself the following rights and powers: (1) The use of the property and the income therefrom for life, (2) the supervision and direction of investments and reinvestments, (3) the amendment or modification of the trust agreements, (4) the revocation of the trust in whole or in part and (5) consumption of principal, when the exercise of such reserved rights and powers as to amendment and modification, revocation and consumption of principal is made dependent upon the acquiesence and approval of a trustee, other than the settlor himself."

Syllabus 3 reads as follows:

"3. The reservation by a settlor of an unrestricted right to revoke the trust does not invalidate such trust, regardless of §8617, GC, in its present form."

On page 11 Judge Zimmerman rendering the opinion uses the following language:

"However, certain language in the opinion in the Hawkins case, unnecessary to a decision on the ground adopted by the court, is to the effect that in the absence of a statute permitting it, a valid trust cannot be recognized where the settlor reserves the right of revocation. Such expression is opposed to the rule announced by all the courts of last resort in other jurisdictions which have spoken on the subject, and cannot be regarded as controlling in Ohio, irrespective of §8617, GC."

In this case also the beneficiaries were claimants by reason of a gift and not by contract.

In each of the two cases above referred to, the creation of the trust was in writing and a trustee was named to administer the trust. These reported cases are to be distinguished from the case at bar in that no trustee was named. This leads us to inquire as to whether or not a trust may be created without naming a trustee. The rule of law is universal that a trust will not fail by reason of the fact that a trustee is not named. Very generally in instances where this principle has been announced a trustee was necessary to administer the trust and in such instances a trustee has been appointed by the proper court having jurisdiction. A very recent and respectable authority is found empowering the donor or grantor to be his own trustee. We quote from Restatement of the Law of Trusts, Volume 1, Section 58, Page 181:

"Where a person makes a deposit in a savings account in a bank in his own

name as trustee for another person intending to reserve a power to withdraw the whole or any part of the deposit at any time during his lifetime and to use as his own whatever he may withdraw, or otherwise to revoke the trust, the intended trust is enforceable by the beneficiary upon the death of the depositor as to any part remaining on deposit on his death if he has not revoked the trust."

We also find adequate authority for the principle that a trust may be created by parol:

"Parol evidence of an express agreement is admissible and may be engrafted upon a devise of land or personalty and upon a **deposit in a bank in the name of depositor.**" Vol. 40, O. Jur., §33, under title "Trusts", page 167.

From the cases cited and through independent research, we think the law is fairly well established that where a deposit is made in a financial institution as a joint and survivorship account, either may draw on the fund during the life of both and upon the death of one, the survivor may draw the balance unless adequate proof is presented showing a contrary intention. Held, **Admr. v Myers, 48 Oh Ap 131.** In the opinion by Judge Richards of the Lucas County Circuit at bottom of page 134 he makes the following observation which is pertinent on the question of trust being created by parol evidence:

"No doubt can exist that parol evidence is admissible to show the existence of a trust in this case; such evidence has been held admissible even to engraft a trust upon a deed, the only requirement being that the evidence shall clearly and convincingly show the necessary facts. **Boughman v Boughman, 69 Oh St 273.**"

Where the deposit is made in the name of two persons, the general rule prevails that the survivor does not take except upon presentation of evidence that such was the intention.

It may be a partnership account in which the partners have varying interests; it may be so made merely for convenience where one party makes all the deposits and the other no interest therein except with the privilege of drawing checks thereon for the benefit of the other or it may be a survivorship account if the evidence clearly and convincingly so discloses.

Applying these principles to the instant case what should be the finding? It is our conclusion that Exhibit 2, being the contract and Exhibit 3, being the bank deposit book should be considered one transaction and we so determine regardless of the fact that the first date in the bank deposit book is January 4, whereas the contract is dated January 5th. We think it can not be gainsaid or denied that all that was done was in contemplation of the final arrangement.

We further determine that the contract, Exhibit 2, was founded upon a valuable consideration as so expressed in the contract itself. The fact that Mrs. Ross testified that her father, during his life, week by week, paid her a reasonable amount for his support, does not alter this fact. Under the contract there were other things that she was required to do. The agreement to furnish him a home and loving care until his end was an element that the parties had a right to take into consideration in entering into a contract. This kind of service is difficult to measure in dollars and cents. It was expressly provided in the contract that the father, George W. Riegle, would make the deposit in the Farmers National Bank of Greenville, Ohio, in trust for Clara R. Ross and her husband B H. Ross, the same to be payable to them at his death. He reserved the right that the fund should be available to him in case of necessity but this was a privilege which is recognized under trust agreements.

The action of the parties in going to the bank and making the deposit in their joint names was in furtherance of this arrangement and we so conclude, even though the contract was not signed until the day following. Necessarily the entire plan must have been worked out between the father and his daughter before taking the actual steps to consummate it. If, in fact he had transferred the bank account to their joint names with intention to create a trust, it would in no sense contradict any of the terms of the contract. It could correctly be stated that what he had agreed to do in the contract he had already done. However, the claim is made that that he did not effectuate at the bank what in the contract he said he would do and it is argued that a contract agreeing to create a trust does not of itself create it. This is a correct statement of the law. However, it is admitted that had the deposit in the bank been made in the name of George W. Riegle and Clara R. Ross or the survivors, the provisions of the contract would have been substantially complied with. Under the evidence in this case that is exactly what should have been done. It was an error on the part of the cashier of the bank in not so aoing. The cashier testifies, substantially, that the statement was made to him that the account was to be in their joint names and that upon the death of either the survivor might draw out the fund. The trial court held, and counsel for plaintiff argue, that this evidence was not competent for the reason that it would be altering and changing the terms of a written contract. We are unable to follow this line of reasoning. So far as the bank deposit is concerned the only contract was between the bank on the one hand and the depositor on the other. The depositors were creditors and the bank was debtor. The form of the deposit was nothing more than for the protection of the bank. It in no sense determined the title. We think the court was in error in rejecting the testimony of the cashier of the bank. Even without this testimony, the language in the written contract would create the trust.

The added testimony of the cashier brings the proof within the standard of clear and convincing testimony.

We are constrained to the view that the trial court was in error and that the judgment must be reversed and final judgment entered for defendants.

Costs are adjudged against the plaintiff.

HORNBECK, PJ. & GEIGER, J, concur.