## HOWARD, Estate of, In re.

Ohio Appeals Second District, Franklin County.

No. 3958. Decided February 11, 1947.

190

Henry A. Reinhard, Columbus, Fred C. Rector, Columbus, for appellant.

Warren A. Smith, Columbus, Humphrey & Montgomery, Columbus, for appellee.

## OPINION

By WISEMAN, PJ.

This is an appeal on law from the judgment of the Pro-

bate Court of Franklin County, Ohio. A complaint was filed under §10506-67 GC by Charles O. Howard, Administrator of the estate of Oren J. Howard, deceased, against Estelle Lanman, alleging that she had "concealed, embezzled, or conveyed away moneys, goods, chattels, things in action or effects belonging to the estate of the decedent". The matter was tried to the Court which found the defendant guilty of concealing and withholding moneys, etc., belonging to said estate in the amount of Four Thousand Two Hundred and Fifty ($4,250.00) Dollars. The defendant filed a motion for a new trial and also a motion to dismiss which were overruled. In passing on the motion the Court held that the defendant should not have been found guilty of "concealment", but was guilty "of having been in the possession of" moneys belonging to said estate. The Court ordered judgment against the defendant in the amount of Three Thousand and Fifty ($3,050.00) Dollars, together with a ten percent (10%) penalty thereon. The complainant filed a motion to amend the complaint by inserting the following: "or of being or having been in the possession of". The motion was sustained on the ground that the complaint should be amended to conform to the proof.

From this judgment the defendant has filed her appeal and in the assignments of error contends that the judgment is against the manifest weight of the evidence and is not sustained by sufficient evidence.

The evidence in this case shows that the Howards and the Lanmans for many years were very friendly. When Mrs. Howard became ill in the fall of 1944, Mrs. Lanman gave helpful assistance to Mr. and Mrs. Howard, who were elderly persons. For a few weeks prior to Mrs. Howard's death, which took place on December 8, 1944, Mrs. Lanman lived in the Howard home. After the death of Mrs. Howard the house was closed and Mr. Howard went to live with the Lanmans. Mr. Howard was suffering from syphilis in an advanced stage, the seriousness and nature of which the Lanmans claim they did not learn until a short time before his death. Without any question the Lanmans did give Mr. Howard excellent care and attention. His condition growing worse, he was removed to St. Anthony's Hospital, and a few days before his death he was committed to the Columbus State Hospital, where he died on March 6, 1946. The defendant presented much testimony as to extent of the care required and care given the decedent. The matter of care was not an issue in the case.

Because of certain questions of law raised in this case an extensive recital of the facts in advisable. The evidence shows that at the time of Mrs. Howard's death, Mr. Howard owned a

home on Carpenter Street, which was free and unencumbered, and had approximately Five Thousand ($5,000.00) Dollars in building and loan certificates and savings accounts. Within a few weeks after the death of Mrs. Howard, to wit: on December 21, 1944, the Lanmans secured a deed from Mr. Howard for the Carpenter Street property, the consideration clause reciting "One Dollar and other valuable considerations and the care, maintenance and support of grantor during his lifetime and payment of funeral expenses after his death by grantees". The evidence further shows that immediately after the deed was executed Mr. Howard, with the assistance of Mrs. Lanman, began to convert into money his building and loan certificates and withdraw from his savings account. Within a period of a few months practically all such assets were converted into cash. The evidence further shows that the Lanmans had a safe deposit box at the Huntington National Bank and that on January 10, 1945, Mrs. Lanman rented a second safe deposit box at the same bank. She testified that the second box was required because the other box was full. Access to the second box was given to both Mr. Howard and Mr. Lanman. She testified that Mr. Howard requested the use of the second box; that at no time did Mr. Howard place any money in the box, but did place a note and mortgage in said box. Mrs. Lanman testified that as Mr. Howard withdrew his money, he gave her large sums of money for the following purposes: Five Hundred ($500.00) Dollars to give to her brother, and at the same time Five Hundred ($500.00) Dollars for her daughter; One Hundred ($100.00) Dollars to make a deposit on the purchase of a new automobile, and later Twelve Hundred ($1200.00) Dollars for the balance due on the purchase price; Two Hundred and Fifty ($250.00) Dollars for a trip to Florida; Two Hundred ($200.00) Dollars for doctor bills; Two Hundred ($200.00) Dollars for miscellaneous expenses. In addition thereto the evidence shows that Mr. Howard expended Twelve or Thirteen Hundred Dollars in remodeling the Carpenter Street property in the spring of 1945; that the Lanmans sold their residence, whereupon Mr. Howard and the Lanmans moved into the Carpenter Street residence, where they continued to reside as one family unit.

The contention that these large sums of money were given to Mrs. Lanman, for the purposes herein mentioned, is supported largely by the testimony of Mrs. Lanman, alone. There is very little corroboration except on the part of Mr. Lanman. There is evidence in the record which refutes her claim. Mrs. Lanman was the only one who possessed a key to the safe deposit box which was rented on January 10, 1945. Mrs. Lanman

opened the box on January 16, 1945, and again on May 2, 1945; that on the latter date, before going to the bank, Mr. Howard withdrew Five Hundred ($500.00) Dollars from the Railroad Building and Loan Company. Mrs. Lanman again opened the box on December 1, 1945, and again on February 27, 1946, at which time she took Mr. Howard's papers out of the box and revoked Howard's access to the box. It is significant to note that the box was rented when Mr. Howard began withdrawing his money, and that Mrs. Lanman took his papers from the box and revoked his access to the box on February 27, 1946, at a time when she, according to her own statement, did not expect him to recover. The testimony of Mrs. Lanman that Mr. Howard requested the use of the box, but placed in it only a note and mortgage, and did not use it for safe-keeping of his money, presents an interesting factual situation. Who was in possession of the money? Mr. Lanman testified, that the money which Howard gave Mrs. Lanman was placed in their safe deposit box in the Huntington National Bank, not in the second box rented, but in the first box, which Mrs. Lanman stated was full. There is no evidence as to the date when this money was placed in the box. Without question Mrs. Lanman came into possession of this money. Whether she was given the money as she claims for certain purposes or appropriated it to her own use and placed it in her own box is a question for the Court to determine. There is strong evidence in this case from which the trial Court concluded that Howard never gave this money to Mrs. Lanman for the alleged purposes. The Administrator, Charles O. Howard, the brother of the decedent, testified that the week before the decedent went to the hospital, the decedent told him that he had Five Thousand ($5,000.00) Dollars in the Huntington National Bank in a safe deposit box and a savings account in the Railroad Building and Loan Company. Furthermore, a letter written by the decedent under date of October 4, 1945, to his two sisters in Elyria, Ohio, was introduced, over objection, in which the decedent wrote about the remodeling of the home, and in the letter stated: "I have a life lease on the home made out by a lawer. It was made leagel and recorded at the Cort house. Then I rented a safety box at the Hunting Bank and put $5000 in it. Also I have a nice savings acont at the Railroad building loan. I am not telling you this to be braging or think I have the world with a fence arond it but I think you both should know it." This evidence would create a grave doubt as to whether the decedent transferred this money to Mrs. Lanman.

Now, let us examine the record as to the conduct of Mrs. Lanman. Mrs. Lanman testified that the money given to her

for her brother was never delivered to her brother and the money given to her for her own daughter had never been deposited to her credit, although one year and three months had elapsed since she claims the money was given. Neither was a new automobile purchased with the money given for that purpose. According to the testimony of Mr. Lanman this money rested in their safe deposit box. The most damaging piece of evidence introduced to refute the claim of Mrs. Lanman is a letter which she wrote to the decedent's two sisters under date of March 2, 1946, which was four days before his death, but a few days after she had entered the second safe deposit box, took from it the decedent's papers and revoked his access to the box. A part of this letter is as follows:

"I guess you know he deeded his home to us when Nora died, for taking care of him the rest of his life, so we are pay-all his bills. * * *"

"Oren has money in the bank that will go to you girls and Ike. I will tell you about it later. He wont get better."

After the appointment of the administrator Mrs. Lanman turned over to him the personal effects and papers of the decedent, but made no mention of the money in question.

After the death of Mrs. Howard, the Lanmans and Mr. Howard always lived together as one family unit which gave rise to a confidential relationship. The evidence in this case must be weighed and considered in light of this confidential relationship.

After a consideration of all the evidence we are of the opinion that the judgment of the trial court was not against the manifest weight of the evidence and is sustained by sufficient evidence except in regard to two items. The defendant claimed that the decedent gave her Thirteen Hundred ($1300.-00) Dollars to purchase a new automobile. The trial court found against the defendant on that item in the amount of Fourteen Hundred ($1400.00) Dollars. The undisputed evidence shows that only Thirteen Hundred ($1300.00) Dollars was involved. There was sufficient corroboration of Mrs. Lanman's claim that he gave her Two Hundred and Fifty $(250.00) Dollars for the Florida trip to justify a finding in her favor on this item.

The appellant has assigned as error the introduction of the letter written by the decedent, contending that such evidence should have been excluded as hearsay. This question was effectively disposed of in the case of **In re Estate of Evans, 71 Oh Ap 127,** decided by the Second District Court of Appeals, in which it held:

"It is error for the Court to exclude testimony of witnesses as to statements made by the decedent to the effect that the property in question was placed in the hands of the one claiming title thereto for safekeeping only, and contradicting such person's testimony that a valid gift was intended."

In our judgment the trial court acted properly in permitting the introduction of the letter as part of the evidence.

Under several assignments of error the appellant claims the trial court committed error in overruling the motions of the defendant to dismiss at the close of the complainant's case and, again, at the close of all the evidence; also, in permitting the complaint to be amended after judgment to conform to the proof; and that said judgment is contrary to law.

Under these several assignments of error two matters are discussed: First, amendment of the complaint; second, whether this action, in light of the evidence, is cognizable under §10506-67 GC.

It is urged that a complaint filed under §10506-67, GC is a special proceeding, quasi criminal in character and is not subject to an amendment. The authorities have held the proceedings to be special and quasi criminal in character. **In re Estate of Black, 145 Oh St 405; Goodrich v Anderson, 136 Oh St 509; In re Estate of Raymond, 66 Oh Ap 428; Halloran v Merritt, Admr., 48 Oh Ap 135.** We find no reported case deciding the question of amendment.

The purpose of the proceeding is to give an effective, speedy and summary relief in the proper case. The technical rules of pleading are not followed. No answer is required. The statute does not contemplate any other pleading except the complaint. Goodrich v Anderson, supra; Halloran v Merritt, Admr., supra; **Leonard v The State, ex rel. Scott, Exr., 3 Oh Ap 313; Hendrickson v Hendrickson, 17 Abs 39.** It is contended that the trial court should have dismissed the complaint which charged, "concealment'", at the time it passed on the motion for new trial at which time the trial court found that the defendant was not guilty of "concealment", but was guilty of "possession". In support of this contention the case of Goodrich v Anderson, supra, is cited, the second part of the syllabus holding that:

"When, in such proceeding, the defendant is found not guilty of concealing or embezzling assets of the estate of the decedent, the Court may not proceed to determine other issues, but has no alternative except to dismiss the complaint."

In passing it might be well to point out that this opinion has troubled students of probate law. The complaint in that case did not charge "concealment", but did charge "possession". For this reason the language of the Court is difficult to comprehend. What were the "other issues" which could not be determined by the trial court? It appears the son had given notes to the father who later made a gift of the notes to the son who destroyed the notes. In the trial court the administrator of the father's estate sought to introduce evidence to prove that the father was mentally incompetent to make such a gift. The Supreme Court held such evidence was inadmissible; that the ultimate objective was a money judgment and where the evidence did not show concealment a money judgment could not be rendered. In effect the Court held that before the Court had jurisdiction to proceed to render a money judgment the defendant must first be found guilty on one of the grounds found in the statute. With this reasoning we agree. We do not agree if the Court intended to hold that the Probate Court, under §10506-67 GC, does not have jurisdiction to proceed to try the right of property, a question which will be discussed later. However, the Court did not hold, and the language of the Court cannot be construed to hold, that if the complaint charges one of the statutory grounds for relief, and the proof supports another statutory ground, the complaint may not be amended to conform to the proof.

It is urged that since this proceeding is quasi criminal in character, supported only by proof of the commission of a wrongful or criminal act, an amendment of the complaint should not be permitted in the absence of a statutory provision authorizing it. It has been held that a complaint under this section involves a charge of wrongful or criminal conduct. In re Estate of Black, supra; however, other authorities have held that the complaint is not necessarily based on a criminal act. Lindquist v Hayes, Admx., 22 Oh Ap 141; Jones v Whaley, 25 Abs 513. In our judgment the complaint may or may not be based on a wrongful, fraudulent or criminal act, depending on the nature of the charge. Sec. 10506-67 GC, supersedes §10673 GC. Perhaps under Section 10673, which provided for filing a complaint alleging that the accused had "concealed, embezzled or conveyed away" assets of the estate, such complaint generally involved a wrongful, fraudulent or criminal act. Whatever may have been the proper interpretation of the statute prior to the effective date of the 1932 Probate Code, it does not follow that the same ruling would be applicable to this statute after it was amended to include a charge that the

accused is suspected "of being or having been in the possession of any moneys'", etc. Under this provision the accused may have come into possession of certain assets rightfully, but may wrongfully withhold such assets from the complainant. In such case the wrongful act of which the accused may be found guilty is not the wrongful acquisition of the assets but the act of wrongfully withholding the assets from the complainant. It is true the accused must still be found "guilty" or "not guilty" of the charge, and if found "guilty" the ten per cent penalty must be imposed. The penalty is an extra burden which the accused must bear for his wrongful retention of such assets. While the proceeding may be quasi criminal in character, in our judgment this statute now provides for litigating a matter which does not involve a criminal act, but which carries with it more of the aspect of a civil than a criminal proceeding.

Even though the proceeding is quasi criminal in character, we are of the opinion that the laws governing civil proceedings in the Probate Court are applicable to this proceeding. **Sec. 10501-22 GC,** in part provides:

"The provisions of law governing civil proceedings in the Court of Common Pleas, so far as applicable, shall govern like proceedings in the Probate Court when there is no provision on the subject in this Act."

There is no statutory provision on the subject in the Act. The statute governing proceedings in Common Pleas Court is §11363 GC, which in part provides:

"Before or after judgment, in furtherance of justice and on such terms as it deems proper, the Court may amend any pleading, process, or proceeding, * * * when the amendment, does not substantially change the claim or defense, by conforming the pleading or proceeding to the facts proved."

Under these sections the Probate Court had authority to amend the complaint to conform to the proof. Upon the state of the record we do not believe it can be contended that the defendant was prejudiced thereby. We do not believe that a different defense would have been made or the evidence introduced by the defendant would have been any different had the complaint in the first instance charged "possession" rather

than "concealment". The defendant was given great latitude in presenting her evidence without objection. This right is extended to both the complainant and the defendant. In **Hendrickson v Hendrickson, 17 Abs 39**, where the complaint alleged "concealment" of certain moneys and assets, listing a hundred items, the Court held that the complainant could introduce evidence showing that the defendant had concealed moneys, etc., other than those listed. The trial Court did not commit error in sustaining the motion to amend the complaint after judgment to conform to the proof.

Lastly, it is contended that the evidence did not present an issue cognizable under §10506-67 GC. It is claimed that title was drawn in question and that the Probate Court has no jurisdiction to determine questions of title. Also it is contended that the relief sought was a money judgment and that this proceeding cannot be used as a substitute for a civil action. Goodrich v Anderson, supra, and In re Estate of Black, supra, are cited. We have already analyzed Goodrich v Anderson and have stated as our opinion that the Court held that before the Probate Court could proceed to render a money judgment the charge in the complaint must be proved. In effect the Court held that proof of the allegation in the complaint is a necessary prerequisite to rendering a money judgment. The Court did not hold that a money judgment may not be rendered in the proper case. By inference, at least, the Court intimated a money judgment could be rendered in the proper case. The type of judgment to be rendered depends on the nature of the complaint and the evidence adduced. The remedy is provided by statute and a money judgment is expressly provided for in the proper case. We cannot conceive of a clearer case for the application of the statute authorizing a money judgment than the case at bar. Having found the defendant guilty "of being or having been in possession of moneys" belonging to the estate of decedent, a judgment for that amount followed as a matter of course under the provisions of §10506-73 GC. The case of In re Estate of Black is distinguished from the instant case on the facts. In that case the ward of the guardian complainant and the defendant had had numerous financial transactions over a period of several years. The factual situation presented required the Court to consider a number of items of debits and credits. The Court could not have determined their differences except by an accounting. The Court held "resort may not be had to a discovery proceeding to collect a debt, obtain an accounting or adjudicate rights under a contract". In both of those cases the Court regarded the action under §10506-

67 GC, as a summary proceeding to discover assets. In the case at bar an action for discovery was required as shown by the evidence. The complainant did not mistake his remedy.

We believe the question of title is determined by the factual situation. In the instant case the Court held the defendant never had title to certain moneys belonging to the estate of the decedent, although in possession thereof. Such a case is clearly distinguishable from one where the Court in the first instance is required to set aside a transfer or adjudicate rights of the parties under a contract. **McMahon v Jones, 17 Abs 488.**

Prior to the passage of the 1932 Probate Code the Court could not entertain jurisdiction of a matter where title was drawn in question. However, under §10506-73 GC, the Court is given authority to cite into court "all persons who claim any interest in the assets alleged to have been concealed, embezzled, conveyed or held in possession, **and at such hearing shall have authority to hear and determine questions of title relating to such assets".** (Emphasizing ours.) Unquestionably, this provision was intended to and did broaden the powers of the Probate Court in hearings on complaints filed under §10506-67, GC, and especially in view of the provision of §10501-53 GC, which confers on the Probate Court "plenary power at law and in equity fully to dispose of any matter properly before the Court, unless the power is expressly otherwise limited or denied by statute".

No longer in a hearing on such complaint may the defendant oust the jurisdiction of the Probate Court by claiming that the property in question was the subject of a gift or that title resides in the defendant. That the Court may now determine questions of title is held in the following cases: In re Estate of Black, supra; **Smith v Ross, 29 Abs 553; In re Guardianship of Sanderson, 64 Oh Ap 177.** In Smith v Ross (Opinion by Judge Barnes of the Second District), the Court on page 557 say:

"In the final analysis the question of title is the ultimate question to be determined. Furthermore, under the new Probate Code, Courts of Probate are given equitable jurisdiction wherever necessary to be invoked in order to grant full relief in any matter properly before the Court."

In that case the defendant set up a trust agreement and contended that the Court did not have jurisdiction to determine

the rights of the parties under §10506-67 GC. In the case of In re Guardianship of Sanderson, a similar factual situation was presented to the Court of Appeals of Summit County. The Court in its opinion say:

"Having in mind the various changes made in the Probate Code by the enactment of 1932, we are of the opinion that the various statutes referred to heretofore, now permit an entirely different construction than was possible under the statutes before amendment. It is our opinion that the Legislature intended, in enacting these and allied sections of the Probate Code, to extend the jurisdiction of the Probate Court to matters closely connected with the administration of estates of deceased persons, guardians, and kindred matters, and that, in connection therewith, it was intended that the Probate Court should be given the power to try questions of title to documents evidencing choses in action of the kind involved in this controversy, which power it did not have under decisions rendered prior to the amendment of the statutes. And it would seem that one of the primary purposes in amending the statutes in the adopted language was to accomplish this result."
* * * *

"The statutes as amended contemplate something more than a summary proceeding; they provide for a trial of the issues as presented by the complaint, in accordance with the law governing trials, except in so far as modified by the express provisions of the Probate Code."

In a hearing on a complaint under §10506-67 GC and §10506-73 GC the Probate Court is given jurisdiction to determine questions of title, and if the defendant is found guilty under the complaint, the Court has complete authority to render a money judgment. It follows that in the instant case the trial Court did not commit error in rendering a money judgment.

Having found that the trial Court erroneously found against the defendant in the sum of Fourteen Hundred ($1400.00) Dollars for money which the defendant contended was given her for purchase of a new automobile, when the evidence, without any question, shows that Thirteen Hundred ($1300.00) Dollars was involved, the Court orders the judgment modified by reducing the amount of said judgment in the amount of One Hundred ($100.00) Dollars. Furthermore, the Court, having found that the finding of the trial court against

the defendant in the sum of Two Hundred and Fifty ($250.00) Dollars for money which the defendant contended was given her for the Florida trip was against the manifest weight of the evidence, the judgment of the trial court will be reversed and remanded unless the complainant agrees to a reduction of the judgment in the sum of Two Hundred Fifty ($250.00) Dollars, in which event the judgment will be affirmed in the amount of Two Thousand Seven Hundred ($2,700.00) Dollars, together with a ten per cent penalty thereon. The judgment of the trial court is otherwise affirmed.

MILLER and HORNBECK, JJ, concur.

Decided March 7, 1947.

### OPINION

By THE COURT:

The application filed by the appellant for a rehearing does not present anything which has not been considered by the Court in its opinion.

The application will be overruled.

WISEMAN, PJ, MILLER and HORNBECK, JJ, concur.

Decided March 24, 1947

### OPINION

By THE COURT:

Submitted on application to certify the record of this case to the Supreme Court, on the ground that the judgment of this Court is in conflict with the judgment in the case of **In re Estate of Black, 75 Oh Ap 294.**

The Black case was reviewed by the Supreme Court and reported in **145 Oh St 405.** The Supreme Court affirmed the judgment of the Court of Appeals. The power given to this Court to certify the record is controlled by **Section 6, Article IV, of the Ohio Constitution,** which provides that:

"Whenever the judges of a Court of Appeals find that a judgment upon which they have agreed is in conflict with a judgment pronounced upon the same question by any other Court of Appeals of the State, the judges shall certify the record of the case to the Supreme Court for review and final determination."

A question arises as to the power of the Court of Appeals to certify on the ground of conflict, when the judgment in the Court of Appeals has been reviewed by the Supreme Court. We recognize the binding effect of the judgment of the Supreme Court. Manifestly, this Court cannot find that its judgment in the instant case was in conflict with the judgment of the Court of Appeals in the Black case, otherwise it would be an admission that we have refused to follow the judgment of the Supreme Court. A conflict could not possibly exist unless this Court finds that the Court in the instant case refused to follow the judgment of the Supreme Court. This Court approved the judgment in the Black case, but distinguished the case at bar on the facts.

This Court, in discussing the opinion of the Supreme Court in the **Black case, 145 Oh St 405,** in its opinion stated:

"The case of In re Estate of Black is distinguishable from the instant case on the facts. In that case the ward of the guardian-complainant and the defendant had had numerous financial transactions over a period of several years. The factual situation presented required the court to consider a number of items of debits and credits. The court could not have determined their differences except by an accounting."

After a careful consideration of the factual situation presented in the instant case and in the Black case, as reported in **75 Oh Ap 295,** we still adhere to, and confirm, our judgment that the two cases are distinguishable on the facts.

We are not unmindful of the importance of the issues raised in the instant case. It is our hope that the Supreme Court may find a way to take this case on review and decide this important legal question. However, we cannot certify the record on the ground that the opinion of this Court is in conflict with **In re Estate of Black, 75 Oh Ap 294,** when, in our judgment, no conflict exists. If this Court has failed to comprehend or has misapplied the law laid down by the Supreme Court in the Black case, we have every reason to believe that the Supreme Court will find some way to review the action taken by this Court.

The application will be denied.

WISEMAN, PJ, MILLER and HORNBECK, JJ, concur.