In re Estate of Woods: Stone, Appellant, *v.*
Woods, Admr., Appellee.*

*Motion to certify the record overruled, March 2, 1960.

278

(No. 6018—Decided July 21, 1959.)

*Mr. Frank B. McClelland* and *Mr. Cloys P. McClelland,* for appellant.

*Mr. Benjamin F. Levinson* and *Mr. Bernard Feitlinger,* for appellee.

Fess, J.   This is an appeal on questions of law from a judgment of the Probate Court finding appellant guilty of having concealed certain specified securities converted to cash by appellant belonging to the estate of Fannie Stone Woods, deceased, of the aggregate value of $37,994.95 and adjudging that Earl J. Woods, administrator of said estate, recover from appellant $37,994.95, plus a ten per cent penalty thereon in the sum of $3,799.50, and costs.

Fannie Stone Woods died intestate on March 5, 1956, leaving her husband as sole survivor. Six brothers and sisters, including her brother, Harley E. Stone, the appellant herein, and a son of a deceased brother, were living at the time of her death. For a period of four years prior to the death of Fannie Woods, appellant had resided with Fannie and her husband. Fannie, a retired school teacher, then sixty years old, had married Earl Woods in 1947. Fannie's relationship with her brothers and sisters was very close and, according to their testimony, her benefactions toward them were kept confidential so far as her husband was concerned and to a large extent among themselves. She particularly relied upon her brother Harley, a dentist by profession, for advice and assistance in her financial affairs. For some time prior to her death, Fannie was confined to her home or in a hospital, suffering from cancer. A day or so prior to May 1, 1955, Fannie requested Harley Stone to sell for her account certain securities. The certificates for these securities were delivered to a broker and upon their sale the broker issued to Fannie two checks aggregating the sum of $37,994.95. Fannie endorsed the two checks and gave them to Harley with instructions to convert them into cash. Harley took the checks to the broker and without endorsing them himself received from the broker a package of currency amounting to $37,994.95. According to Harley's testimony, he delivered this package of money to Fannie. This testimony is corroborated by a sister who testified that she was present in the room and saw Harley deliver a package to Fannie, saying, "Now, Fannie, here is the money for your checks I had cashed," and that Fannie put it down beside her and said, "All right, I will put it down here until I go upstairs and take care of it."

In his application for appointment as administrator filed June 22, 1956, Earl Woods disclosed no personal property, and he was appointed administrator upon giving bond in the sum of $4,000. On July 25, 1956, said administrator filed an inventory without appraisal, setting forth as the sole assets of the estate money belonging to the decedent in the sum of $41,510.[1]

---

[1]It was stated during argument on the appeal that this $41,510 in currency, together with $54,000 in government bonds in the joint names of Harley E. Stone or certain of his brothers and sisters, was discovered by Earl Woods

Bond was thereafter fixed in the sum of $80,000.

On August 22, 1956, appellant filed exceptions to the inventory, claiming that the currency belonged to him rather than to the estate. On November 1, 1956, by leave of court, these exceptions were withdrawn by appellant.

On August 2, 1956, the administrator filed his complaint reciting that he had good cause to suspect and believe that appellant had concealed, embezzled or conveyed away money, goods, chattels, things in action or effects belonging to the estate, in fraud of the right of such administrator, to wit, the described securities converted into cash aggregating $37,994.95.

The record reveals a rather fantastic story related by five of the brothers and sisters of the deceased, that each of them secretly received from Fannie, prior to her death, gifts of $4,000 in cash which they had retained intact without depositing the money at the time of the hearing. In its opinion, the court says:

"A study of the record shows the course of the transactions by which this property [the securities] came into the hands of the respondent. As to the fact that they were in his possession there is not much of dispute or of occasion for doubt.

"However, when it comes to the final step in the matter, that of the distribution of the funds among the relatives of the decedent, the testimony of the respondent is so bizarre that to accept it taxes the credulity of the court beyond the breaking point. One can not reasonably be expected to believe that such uniformity of testimony as to the disposition of so considerable a sum of money among so many people could be possible.

"The court can not and does not believe that this testimony is sufficient to show that the title to the property was lodged anywhere except in the decedent at the time of her death."

We recognize that ordinarily it is the function of the trial court to determine the credibility of the testimony of witnesses and that the trial judge in judging the accuracy, candor, and credibility of witnesses has the advantage of seeing the witnesses testify and hearing what they say firsthand, with the op-

---

buried in the back yard of their residence. In subsequent proceedings, the Probate Court ordered the bonds delivered to the Internal Revenue Service in response to the lien of a jeopardy assessment levied against Dr. Stone for unpaid income taxes without prejudice to his right to contest such lien.

portunity to observe their appearance, conduct, demeanor, inflections of voice, hesitancy or frankness, etc., while a reviewing court has before it only the cold type of the record of what has been said. But in the instant case the major portion of the testimony was taken by the referee, and the Probate Judge had no greater advantage of appraising the truth of the testimony than the members of this court upon review.

Findings of a referee having support in the evidence are to be given the force and effect of a verdict of a jury or the findings of the court in a nonjury case, and as a general rule will not be disturbed by a Court of Appeals unless manifestly against the weight of the evidence. 5A Corpus Juris Secundum, 628, Section 1665; *Kuerze* v. *Western German Bank*, 12 Ohio App., 412, 418, affirmed in 100 Ohio St., 547, 127 N. E., 924; *Cincinnati & Eastern Electric Ry. Co.* v. *Ritty*, 21 C. C. (N. S.), 568, 29 C. D., 619. And, as a general rule, findings concurred in and approved by the trial court are especially entitled to be respected and sustained on appeal, unless manifestly against the weight of the evidence, not warranted by the evidence, or unless there be no evidence to sustain the findings. 5A Corpus Juris Secundum, 635-641, Section 1669.

Acknowledging that the findings of the referee approved by the trial court are entitled presumptively to be respected and sustained, nevertheless in the performance of our duty to determine whether the report and recommendation are sustained by evidence of a substantial, probative character and in accordance with law, it seems to us, contrary to the conclusion reached by the trial court, that the uncontradicted testimony of a number of witnesses is not to be rejected in its entirety because such witnesses may, more or less uniformly, relate the same improbable story. Notwithstanding the close and confidential relationship between the members of the Stone family, it is quite difficult for us to believe that each of them was guilty of perjury at the hearing before the referee.[2] As a general rule, a reviewing court

[2]Harley and Floyd Stone are dentists by profession. Fred Stone is a merchant, engaged in business in Athens, Ohio. Florence Stone Jones, the youngest sister, is a machine operator and formerly was employed as an agent by a public transportation company. Ada Stone is a public school teacher in .

cannot assume that any witness attempted to deceive the trial court. On the contrary, the presumption is that every witness under oath is honest. *City of Alliance* v. *Campbell*, 17 C. C., 595, 6 C. D., 762, affirmed in 53 Ohio St., 650, 44 N. E., 1132.

In a proceeding for concealment of assets, the burden is upon the complainant to prove by a preponderance of the evidence that the respondent received the money or other thing of value claimed to have come into his hands, and that he concealed, embezzled or conveyed it away. *Leonard* v. *State, ex rel. Scott, Exr.,* 3 Ohio App., 313. Since the proceeding requires a finding of guilty and is quasi-criminal in character, the burden must be imposed upon the complainant (or the court, cf. *In re Estate of Fife*, 164 Ohio St., 449, 132 N. E. [2d], 185) to at least produce evidence of such probative character that reasonable minds might reach different conclusions upon the guilt or innocence of the respondent. As hereinafter indicated, no burden was imposed upon the respondent to trace the disposition of decedent's money during her lifetime. Apparently the relatives' testimony was introduced to support respondent's contention that he had given the money to the decedent and did not have it himself. Rejection of this testimony in its entirety would not tend to support the administrator's claim that respondent was concealing or had possession of decedent's money. In such special proceeding, wherein the evidence discloses that the respondent at some time prior to the death of the decedent had a transitory possession of the proceeds of checks belonging to the decedent, the burden is also upon the complainant to trace the funds into the estate of the respondent, and no burden is cast upon the respondent to trace the money elsewhere between the time of its delivery to the decedent and her subsequent death. Cf. *In re Estate of Leiby*, 157 Ohio St., 374, 105 N. E. (2d), 583.[3]

---

Marietta, Ohio. Kenneth Stone, the nephew, who received five shares of Reed Royalty Trust by transfer from Fannie Stone in May 1955, is employed by the Singlow Furniture Company in Logan, Ohio. Dewey Stone is Superintendent of Schools at Leesburg, Ohio. The occupation of Ruth Stone Miller is undisclosed.

[3] By way of contrast, in *In re Estate of Fife, supra* (164 Ohio St., 449), the certificates of stock in dispute had been assigned in writing and delivered to the respondent by decedent some years before his death and had remained in the exclusive possession and control of the respondent. But the certificates

In the opinion in the *Leiby case, supra,* Judge Matthias, speaking for the court, said, at pages 383-384:

"The General Assembly, by its appropriate use of language in these sections, has limited the use of this summary proceeding to actions to recover specific property or the value thereof belonging to a trust estate, title to which was in a decedent at his death, or to the recovery of property belonging to a trust estate concealed, taken or disposed of after the appointment of a fiduciary. If cases like this one were authorized by such statutory provisions, administrators could call on recipients of decedent's checks payable to 'cash' and require them to prove payment of the proceeds thereof to the decedent. * * * The administrator might equally seek to require the indorsees and all others who cashed such checks to account for the proceeds thereof. Certainly no one would contend that the indorsers of those checks could be proceeded against summarily under Section 10506-67 *et seq.,* General Code, for the amount of such checks plus ten per cent penalty."

In the instant case, it is undisputed that there is no concealment of the securities. Decedent's title to the securities passed nine months before her death. Apparently, it is claimed that Dr. Stone is concealing money—currency—in the sum of $37,994.95.

Throughout the United States it has been held without exception that summary proceedings for the recovery of property belonging to decedents' estates can not be used for the collection of debts owing the estate. 88 A. L. R., 853. In Ohio, the statute (Section 2109.50 *et seq.,* Revised Code) provides a summary means, inquisitorial in nature, (1) to recover specific property, or the proceeds or value thereof, belonging to a trust estate, title to which was in a decedent at his death, or (2) to recover property belonging to a trust estate, concealed or dis-

had been originally issued to decedent in his name and no transfer of such certificates had been registered upon the books of the corporation. Therefore, a prima facie case was made for the inclusion of the certificates as assets of the estate, and it became incumbent upon respondent to rebut and overcome such prima facie case by clear and convincing evidence that such certificates had been assigned and delivered by way of gift to respondent by the decedent during his lifetime.

posed of *after* the appointment of a fiduciary. *In re Estate of Black*, 145 Ohio St., 405, 62 N. E. (2d),90; *In re Estate of Leiby*, *supra* (157 Ohio St., 374), at page 381; *In re Estate of Gottwald*, 164 Ohio St., 405, 411, 131 N. E. (2d), 586; *In re Estate of Fife*, *supra* (164 Ohio St., 449) at page 453. The purpose of the section is not to furnish a substitute for a civil action to recover judgment for money owing to an administrator, but rather to provide a speedy and effective method for discovering assets belonging to the estate and to secure possession of them for the purpose of administration. *Goodrich, Admr.*, v. *Anderson*, 136 Ohio St., 509, 26 N. E. (2d), 1016; *In re Guardianship of Zimmerman*, 141 Ohio St., 207, 226, 47 N. E. (2d), 782, 791. Since a finding of "guilty" or "not guilty" is required, with the imposition of a penalty upon a finding of guilty, the proceeding is quasi-criminal in nature. *In re Estate of Fife*, *supra*, at page 453. It has also been held in Ohio that resort to the statute may not be had to collect a debt, obtain an accounting or adjudicate rights under a contract. *Goodrich, Admr.*, v. *Anderson*, *supra*. *In re Estate of Leiby*, *supra.*[4]

Courts generally have frowned upon the exercise of summary jurisdiction. *In re Estate of Gottwald*, *supra* (164 Ohio St., 405) at page 410. In this connection, the obligation is im-

[4]But see *In re Estate of Howard*, 79 Ohio App.. 203, 215, 68 N. E. (2d), 820, distinguishing *Goodrich, Admr.*, v. *Anderson*, *supra*, and *In re Estate of Black*, *supra*. The *Howard* case was decided by this court on February 11, 1947. It is interesting to note that the decision in the *Howard* case affirmed a judgment rendered by one of counsel for respondent when serving as Probate Judge. In the *Howard* case, the respondent was found guilty "of being or having been in the possession of" moneys belonging to the estate, whereas the evidence disclosed that from time to time respondent had received money from the decedent for various and sundry purposes. On March 15, 1951, the Court of Appeals rendered its opinion in the *Leiby* case (60 Ohio Law Abs., 245, 101 N. E. [2d], 214), affirming the judgment of the Probate Court finding respondent guilty "of having been in the possession of moneys of the estate." The original complaint charging the respondent with having concealed, embezzled or carried away goods, chattels and things in action or effects of Robert S. Leiby, deceased, had been amended (as in the *Howard* case) by inserting "or that she is or has been in the possession of." In our opinion; the principles pronounced in the *Howard* case in so far as they have any bearing upon the instant case, have been overruled by the Supreme Court in the *Leiby* case in which it reversed this court.

posed upon the complainant to show that the subject matter of his complaint is within the contemplation of Section 2109.50 Revised Code. *In re Estate of Black, supra* (145 Ohio St., 405), as modified by *In re Estate of Fife, supra* (164 Ohio St., 449), at page 456. And if the evidence reveals another and different situation, such as an effort to collect a debt, obtain an accounting or adjudicate rights under a contract, the complainant is relegated to a civil action with appropriate pleadings to define the issues, and he may not resort to the summary proceeding. *Goodrich, Admr.,* v. *Anderson, supra,* at page 512; *In re Estate of Black, supra,* at page 412.

The facts in the *Leiby* case are dissimilar from those in the instant case, but the principle upon which the conclusion was reached in the former, in our opinion, is decisive in the instant case. In *Leiby,* the checks drawn payable to the decedent were cashed by the respondent who testified, apparently without corroboration, that the proceeds thereof were delivered to the decedent, respondent's employer, during his lifetime. In the instant case, the two checks payable to the decedent were endorsed by her and cashed by the respondent who testified he delivered the proceeds to the decedent nine months before her death. This testimony of respondent is not only undisputed but, as above indicated, is corroborated by his sister. In *Leiby,* the court points out that the master commissioner did not find that any of the funds were in the present possession of the respondent or were in her possession at the time of decedent's death or were in her possession at any time otherwise than in transition, nor did it appear that the respondent owned any property, real or personal, to which any such funds were traceable. In the instant case, the referee found that the decedent ''during her lifetime was the owner of certain securities, the proceeds of which came into the possession of Dr. Harley E. Stone; that Dr. Harley E. Stone *was* in the possession of this money; that it has not come into the estate. Your referee can come to no other conclusion than that it was her money and that it has not been *accounted* for by the respondent herein. Therefore, it is the finding of your referee that the respondent herein is guilty of concealing assets belonging to the estate of the decedent within the purview of Revised Code Section 2109.50.'' (Emphasis supplied.)

The journal entry merely recites the overruling of the exceptions to the referee's report, the taking of additional testimony and a finding that the respondent is guilty of having concealed the specified securities converted into cash belonging to the estate and adjudges that the administrator recover from the respondent $37,994.95, plus penalty of $3,799.50, and costs.

As we construe the finding of the referee, as in the *Leiby case*, he merely finds that the respondent had been in possession of the money and had not accounted therefor to the decedent nor her administrator. As in the *Leiby case*, the administrator's remedy in the instant case is an action at law for the recovery of money claimed to be due or for an accounting between the parties.

The judgment is reversed and the cause is remanded to the Probate Court with directions to dismiss the proceeding at the administrator's costs in this court and in the Probate Court.

*Judgment reversed.*

BRYANT,. P. J., and DUFFY, J., concur.

FESS, J., of the Sixth Appellate District, sitting by designation in the Tenth Appellate District.