[Cite as *In re the Estate of Gordon*, 2014-Ohio-2087.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| IN THE MATTER OF THE ESTATE OF ESTHER GORDON: CAROLYN ZARA | : | JUDGES: Hon. W. Scott Gwin, P.J. Hon. Sheila G. Farmer, J. Hon. Craig R. Baldwin, J. |
|  | : |  |
| Plaintiff-Appellant | : | Case No. 13-CA-77 |
| -vs- | : |  |
| PATRICIA SHAFFER GORDON, ET AL | : | O P I N I O N |
| Defendants-Appellees | : |  |

CHARACTER OF PROCEEDING:     Civil appeal from the Richland County Court
                             of Common Pleas, Probate Division, Case
                             Nos. 20111111, 20111111A, and
                             20111111B

JUDGMENT:                    Affirmed

DATE OF JUDGMENT ENTRY:      May 14, 2014

APPEARANCES:

For Plaintiff-Appellant              For Defendant-Appellee Patricia Shaffer

ERICA PROBST                         WILLIAM FITHIAN III
STEVEN ROWE                          111 N. Main Street
88 West Mound Street                 Mansfield, OH 44902-7669
Columbus, OH 43215


Administrator/Executor               For Defendant-Appellee Joshua Shaffer
JOSEPH L. JERGER                     DALE MUSILLI
Bayer, Jerger & Underwood            105 Sturges Avenue
362 Lexington Avenue                 Mansfield, OH 44903
Mansfield, OH 44907

*Gwin, P.J.*

{¶1}    Appellant appeals the August 1, 2013 judgment entry of the Richland County Court of Common Pleas, Probate Division, finding that appellant failed to prove, by a preponderance of the evidence, that appellees concealed, carried away, or stole cash from decedent's safes.

*Facts & Procedural History*

{¶2}    Esther Gordon, decedent, ("Esther") and Ralph Gordon ("Ralph") were married and have two daughters, appellant Carolyn Zara ("Carolyn") and appellee Patricia Shaffer Gordon ("Patricia").   Ralph died in July of 2006.   Ralph had a hidden room built beneath the stairwell in the basement of the home he shared with Esther located at 235 West Cook Road in Mansfield, Ohio.   The room contained several safes in which Ralph placed money, documents, and government bonds.   Ralph told Carolyn and Esther about the safes, but not Patricia.

{¶3}    After Ralph's death and prior to his funeral in July of 2006, appellee Joshua Shaffer ("Joshua"), Patricia's son, knocked down the block wall under the basement steps and either Esther or Joshua opened the safes and removed a metal lockbox containing approximately $80,000 and various documents.   When Patricia and Joshua returned to the home after visiting the funeral home, the metal lockbox was gone.   On July 15, 2006, Carolyn and her son Anthony Zara ("Anthony") used the safe combinations to open the two safes to count and/or inventory the money and bonds contained in the safes.   The combinations for the safes were placed three places in Esther's home.    After Carolyn and Anthony counted the money, Carolyn placed incorrect written combinations on top of the correct written combinations located at the

three places in Esther's home. In July of 2008, Patricia and Joshua attempted to open the safes, but were unable to do so with the combinations Esther provided them.

{¶4} On October 21, 2008, Esther told Carolyn she changed the payable on death beneficiary designations on various bank accounts into both Patricia and Carolyn's names instead of solely Carolyn's name. On October 22, 2008, Carolyn checked the safes and found all the cash and bonds were gone. She called the Mansfield Police Department. Carolyn told the police approximately $600,000 or $700,000 was missing, though Esther maintained the amount was approximately $300,000. Patricia submitted to and passed a lie detector test, but she and Joshua were slow to complete the necessary documents to re-issue the bonds that were missing. Carolyn helped Joseph Jerger ("Jerger"), the guardian of Esther's estate, get the serial numbers on the savings bond and assisted him in having the bonds re-issued. However, Carolyn did not inform the police that she placed the incorrect combinations on top of the correct combinations in the three hiding places in the house. The bonds that were missing from the safe were re-issued and delivered to Esther's guardianship account.

{¶5} Carolyn filed an application for guardianship of Esther on April 23, 2009. Esther was interviewed by a court investigator in May of 2009 and indicated she did not want a guardian. Esther hired Jerger to represent her in the guardianship proceeding. At a June 29, 2009 hearing, Esther consented to the guardianship as long as Jerger would be appointed the guardian of her estate and Carolyn was appointed the guardian of her person. Esther died on February 11, 2011.

{¶6} After Esther's death, Jerger filed an application to probate the will and motion to be appointed administrator, with will annexed ("WWA") on March 16, 2011, requesting to be appointed administrator, WWA, because both Carolyn and Patricia, the sole beneficiaries of Esther's estate, were named parties in a concealment action filed by Jerger in his capacity as Esther's guardian of the estate. The trial court granted Jerger's motion on April 20, 2011 and appointed Jerger administrator, WWA, of Esther's estate. The will attached to the application to probate was prepared in 1970 by Esther where she named Ralph as the primary reciprocal beneficiary and named Carolyn, Patricia, and her son Richard Gordon, as equal beneficiaries. Richard Gordon died in 1971 without issue. The will was prepared by Joseph Jerger, Sr.

{¶7} On June 8, 2011, Carolyn filed a concealment of assets action against Patricia and Joshua, with Jerger named as the Administrator, WWA. On July 18, 2011, Patricia filed a concealment complaint against Carolyn, Anthony, James Zara ("James"), Carolyn's husband, and also named Jerger in the complaint as Administrator WWA. Also on July 18, 2011, Jerger filed a concealment counterclaim against Carolyn and a concealment cross-claim against Patricia, Joshua, Anthony, and James. The parties subsequently waived their jury demands during the evidentiary hearing on the concealment actions. In a separate action, Carolyn and Patricia filed objections to the estate inventory filed by Jerger. The probate court held a joint hearing on the concealment claims and the objections to inventory.

{¶8} Carolyn testified that in July of 2006, Esther called her and was upset that Joshua was in the safe. Carolyn said sometimes Esther told her she gave Joshua permission to go into the safe to get papers and sometimes she said she never gave

him permission to go in the safes. An affidavit by Esther states that she gave Joshua the combinations and permission to enter the safe in July 2006 to remove a metal lockbox containing birth certificates and Ralph's military discharge papers. Carolyn and Anthony went into the safes in July of 2006 to inventory the contents of the safes. Carolyn stated Esther knew what they were doing and she was not upset. Carolyn knew where the combinations were kept because Esther told her where she kept them in the house: behind a picture on the wall, in the china cabinet, and in the bedroom. Carolyn and Anthony opened both safes. In July or August of 2006, Carolyn put incorrect combinations over the correct combinations in the three places where Esther kept the combinations in the house because she was concerned about someone getting into the safe. Carolyn could not recall whether she told Esther about the altered written combinations. Between July 21, 2006 and October 22, 2008, Carolyn checked the safes prior to taking Esther to Florida in May of 2008 and after they returned from Florida in 2008.

{¶9} Carolyn stated she was starting guardianship proceedings for Esther when an attorney told her to check the safes to inventory the money and this is when she found the safes were empty on October 22, 2008. Carolyn testified there was $703,798 of cash in the safes and this is the amount she told the police was missing on October 22, 2008. However, at the trial on the concealment actions, Carolyn stated she made a mistake in her adding and it appeared the correct number of cash missing was more like $351,889. The police report submitted as an exhibit indicates Esther told the police there was approximately $300,000 in the safes while Carolyn told the police there was $600,000 or $700,000 in the safes. Carolyn testified she did not tell the police that she

placed the incorrect combinations on top of the correct combinations because it never occurred to her and they did not ask her whether the combinations kept in the home were the correct ones. According to Carolyn, Esther was not physically able to get into the safes herself and never told Carolyn she went into them.

{¶10} Anthony Zara testified he did not take money from the safes or the lockbox. He inventoried the safes with Carolyn in July of 2006 and counted $705,000 in cash and $200,000 in bonds. Carolyn told Anthony about the incorrect combinations, which he thought was ridiculous and he told her to get the money out of the house.

{¶11} Joshua testified that on July 9, 2006, Esther asked him to knock down the block wall under the basement steps so she could get to the documents to prepare for Ralph's funeral. On that day, he went into the basement with Esther, who had the combination to the safes in her hand. He stated he did not know where she went to get the combinations, but she had left the room and came back with them in her hand. On that day, he broke through the wall at Esther's request. Esther handed him a lockbox which he opened and took out the papers Esther was looking for. Joshua estimated there were approximately fifteen to twenty envelopes inside the lockbox and, when Esther asked him to count the money, he counted approximately $80,000. Joshua stated a note in the lockbox said one-third of the money was to go to Carolyn, one-third was to go to Patricia, and one-third to Ralph's grandchildren. Joshua testified that, when he returned to the basement after going to the funeral home, the lockbox was gone. In July of 2008, Joshua stated Esther showed he and Patricia the combinations to open the safes and asked them to open them. However, when he went into the basement and attempted to open the safes, he stated he could not open them and thus

returned the combinations to Esther, who put them back in the china cabinet. Joshua also provided extensive testimony regarding his financial information since 2008.

{¶12} Patricia confirmed Esther asked Joshua to open the wall and get Ralph's papers out of the lockbox in July of 2006. Patricia stated the metal lockbox had approximately $80,000 in it and contained a note from Ralph that divided the money between Carolyn, Patricia, and the grandchildren. When Joshua could not find the lockbox after returning to the basement, Esther told them the lockbox was in Rick's (Esther's deceased son) room. However, they did not find the lockbox in Rick's room. Patricia testified Esther called her on July 15, 2006 and was upset and stated that Anthony, Jim, and Carolyn were in the basement counting her money when she did not want them down in the basement. Patricia stated that, in July of 2008, Esther asked her and Joshua to look in the safe for her will. When Esther came out with the combinations, Patricia and Joshua attempted to open the safes, but could not get the safes open. Patricia testified that she started working at Kohl's in 2009 and, prior to that, was paid contract labor when she worked at a floral shop and cleaned houses, with which she paid her rent. She frequently had roommates living with her to help pay rent and share expenses. Patricia stated in October of 2009, the Salvation Army helped her to pay $750 of her rent and two other months, various churches assisted her in paying rent.

{¶13} Alan Edwards of the Mansfield Police Department testified he responded to the call at the home on October 22, 2008 and that Carolyn advised him Patricia and Joshua were suspects. Carolyn told him there was $600,000 missing from the safes and the safes had been opened prior to his arrival. Darren Remaley of the Mansfield

Police Department stated he requested a polygraph from Carolyn, but she never returned his call. Georganne Daiber of the Red Barn Saloon testified that Joshua was a regular customer at the bar and she remembered him paying with "old money."

{¶14} After the evidentiary hearing, the court issued a judgment entry on August 1, 2013. The trial court found Joshua spent more money than he earned from July 2006 through the first hearing date, was not forthcoming on documents filed in child support matters, and spent "old style" money at the Red Barn Saloon. Thus, the trial court found Jerger proved, by a preponderance of the evidence, that Joshua was guilty of having concealed and conveyed away $80,000. The trial court assessed Joshua a 10% penalty for a total judgment of $88,000. As to the remaining cash at issue in the safes, the trial court found that all the complainants failed to prove, by a preponderance of the evidence, any specific person or persons concealed, carried away, or stole the cash as there were many individuals with the knowledge, opportunity, access and motive to take the cash.

{¶15} Appellant appeals the August 1, 2013 judgment entry of Richland County Court of Common Pleas, Probate Division, and assigns the following as error:

{¶16} "I. THE JUDGMENT ENTERED BY THE TRIAL COURT WAS NOT SUPPORTED BY THE SUFFICIENCY OF THE EVIDENCE AND SHOULD BE REVERSED.

{¶17} "II. THE JUDGMENTS ENTERED BY THE TRIAL COURT [WERE] AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND SHOULD BE REVERSED."

I. & II.

*Manifest Weight & Sufficiency of the Evidence*

{¶18} Appellant argues the trial court's judgment was against the manifest weight and sufficiency of the evidence. In *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, the Ohio Supreme Court clarified the standard of review appellate courts should apply when assessing the manifest weight of the evidence in a civil case. The Ohio Supreme Court held the standard of review for manifest weight of the evidence for criminal cases stated in *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E. 2d 541 (1997) is also applicable in civil cases. *Eastley,* 132 Ohio St.3d. A reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *Id;* see also *Sheet Metal Workers Local Union No. 33 v. Sutton*, 5th Dist. Stark No. 2011 CA 00262, 2012-Ohio-3549. "In a civil case, in which the burden of persuasion is only by a preponderance of the evidence, rather than beyond a reasonable doubt, evidence must still exist on each element (sufficiency) and the evidence on each element must satisfy the burden of persuasion (weight)." *Eastley*, supra, 2012-Ohio-2179.

{¶19} As an appellate court, we are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. *Markel v. Wright*, 5th Dist. Coshocton No. 2013CA0004, 2013-Ohio-5274. Further, "an appellate court should not substitute its judgment for that of the trial court when there exists * * * competent and credible

evidence supporting the findings of fact and conclusion of law." *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). The underlying rationale for giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony. *Id.* Accordingly, a trial court may believe all, part, or none of the testimony of any witness who appears before it. *Rogers v. Hill*, 124 Ohio App.3d 468, 706 N.E.2d 438 (4th Dist. 1998).

*Concealment*

{¶20} Appellant argues the trial court erred in: believing part of Joshua's testimony regarding the safes after finding him not credible in his testimony regarding the $80,000; failing to appropriately weigh the evidence that Joshua and Patricia spent beyond their means following the theft; and the testimony and evidence generally do not support the findings of fact by the trial court. We disagree.

{¶21} A concealment action is brought under R.C. 2109.50 and permits a complaint to be made to the probate court "against any person suspected of having concealed, embezzled, or conveyed away or of being or having been in the possession of any moneys * * * of the estate." R.C. 2109.50. The purpose of R.C. 2109.50 is to provide a speedy and effective method of discovering assets belonging to the estate and securing their recovery. *Wozniak v. Wozniak*, 90 Ohio App.3d 400, 629 N.E.2d 500 (9th Dist. 1993). It is a quasi-criminal statute requiring a finding of guilty or not guilty. *Ukrainiec v. Batz*, 24 Ohio App.3d 200, 202, 493 N.E.2d 1368 (9th Dist. 1982). R.C. 2109.52 empowers the probate court to conduct a hearing in the concealment

proceeding at which the court may determine questions of title concerning the allegedly concealed, embezzled, or conveyed estate assets, to determine whether the person accused is guilty and, if so, to enter judgment against the person found guilty for the amount of the money or value of assets with a ten percent penalty. *Tewksbury v. Tewskbury*, 4th Dist. No. 07CA771, 2008-Ohio-4600.

{¶22} The inquiry under R.C. 2109.50 focuses on the ownership of the asset and whether possession of the asset is being impermissibly concealed or withheld from the estate. *Wozniak*, 90 Ohio App.3d at 407. "A plaintiff states an actionable cause under R.C. 2109.50 if he alleges that the asset is the exclusive property of the estate and that the defendant has unauthorized possession of the asset or in some way has impermissibly disposed of it." *Id.* The complaintant must show, by a preponderance of the evidence, that the defendant received money or other assets of an estate claimed to have come into her hands and that she concealed, embezzled, or conveyed it away. *In re Woods Estate*, 110 Ohio App.277, 167 N.E.2d 122 (10th Dist. 1959).

{¶23} We first disagree with appellant's argument that the trial court erred in finding only a portion of Joshua's testimony not credible. As noted above, the trial court had the opportunity to view Joshua and observe his demeanor, gestures, and voice inflections while he was testifying and thus the trial court "may believe all, part or none of the testimony of any witness." *Lee v. Lee*, 5th Dist. Licking No. 2008 CA 112, 2009-Ohio-5250. The trial court was thus free to accept a portion of Joshua's testimony. Further, the portion of Joshua's testimony that the trial court found credible was also testified to by other individuals at trial. Patricia testified Esther asked Joshua to break into the wall in July of 2006 to retrieve papers necessary for Ralph's funeral and also

testified in July of 2008 she, Esther, and Joshua were unable to open the safes with the combinations Esther provided. Both Patricia and Jerger, who the trial court specifically found to be credible, testified Esther expressed concern about Carolyn controlling or managing her finances.

{¶24} We further find the trial court did not err in failing to properly weigh the evidence that Joshua and Patricia spent beyond their means following the theft. In finding Joshua guilty of concealment in the amount of $80,000, the trial court specifically found that "Joshua spent more money than he earned since July 2006 through the first hearing date in this matter" as evidence of the $80,000 concealment. Further, in reviewing the record, there is no evidence that the money Joshua had in excess of his income from July of 2006 to July 2012 was higher than the $80,000 amount he was assessed by the trial court. Patricia testified that she started working at Kohl's in 2009 and, prior to that, paid her rent by working as contract labor at a floral shop and cleaning houses. In addition, she frequently had roommates living with her to pay rent and various churches and the Salvation Army assisted her several times in paying rent. In reviewing the record, there is a lack of evidence showing Patricia lived beyond her means. Thus, the trial court did not err in weighing the evidence regarding Joshua and Patricia's finances.

{¶25} Carolyn finally argues the testimony and evidence generally do not support the findings of fact by the trial court and the trial court erred in finding Patricia and Joshua not guilty of the concealment of the cash in the safes. We disagree.

{¶26} In this case, the trial court rendered extensive findings of fact and conclusions of law and competent and credible testimony and other evidence supports

these findings of fact and conclusion of law. Carolyn presented an unclear picture regarding the amount of cash actually missing from the safes. While she informed the police and the trial court, at the beginning of the trial, that the amount missing was $703,798, Carolyn later stated during her testimony that she made a math error and the actual amount missing was more like $351,889.

{¶27} Further, there were multiple individuals with the motive and opportunity to take the money out of the safes and the trial court did not err in concluding that neither party proved, by a preponderance of the evidence, that the defendants (other than the $80,000 assessed to Joshua) received money or other assets of the estate that they concealed, embezzled, or conveyed away.

{¶28} The Mansfield Police Department investigated the incident after Carolyn initially reported Patricia and Joshua were suspects and Patricia later reported Carolyn and her family as suspects. In May of 2009, the Mansfield Police Department determined the case would be deactivated because there was not enough evidence to pursue charges against anyone and noted a request for polygraph for Carolyn was outstanding after Patricia previously submitted to a polygraph. Patricia and Joshua never informed the police about the missing $80,000 from the lockbox and Carolyn, James, and Anthony never told the police or Esther about the incorrect combinations that Carolyn placed over the correct combinations.

{¶29} Carolyn knew about the combinations to the safe, had access to the safes even after she placed the incorrect combinations in Esther's hiding places, and had a motive to remove the cash from the safes as she reported the theft one day after discovering Esther had changed the payable on death beneficiaries on multiple bank

accounts from Carolyn's name to both Carolyn and Patricia's name. Patricia and Joshua also had the motive and opportunity to remove the cash from the safes as they found out about the safes in July of 2006 and, in July and October of 2008, became concerned that Carolyn was controlling all of Esther's money. Anthony knew about the contents of the safes after completing an inventory with Carolyn in 2006 and also knew the correct combinations were behind the incorrect combinations placed in the three hiding places at Esther's home. James claims he did not know about the safes until October of 2008, yet went to Mississippi to gather information about Patricia's lifestyle. There was evidence presented that there was a mysterious, unidentified footprint in the vicinity of the vault area of the basement.

{¶30} Inexplicably, neither Carolyn nor Patricia took any steps to remove and secure the money after each accused each other and their families of trying to control and/or steal Esther's money in July of 2006 and thereafter. After the theft was discovered in October of 2008, the sisters continued their discord, accusing each other and their families of not cooperating with the police investigation. The police determined, after investigation, that no one would be charged and the case was closed. After reviewing the entire record, we concur with the trial court that, due to the fact that multiple people had knowledge, opportunity, access, and a motive to take the cash from the two safes, that appellant failed to prove, by a preponderance of the evidence, that appellees concealed, embezzled, or conveyed away the $351,889 cash in the safes. Competent and credible evidence exists to support the trial court's conclusion and the trial court did not clearly lose its way or create a manifest miscarriage of justice. The

August 1, 2013 judgment entry regarding the concealment actions is not against the manifest weight or sufficiency of the evidence.

{¶31} Based on the foregoing, appellant's assignments of errors are overruled. The August 1, 2013 judgment entry of the Richland County Court of Common Pleas, Probate Division, regarding the concealment of assets actions, is affirmed.

By Gwin, P.J.,

Farmer, J., and

Baldwin, J., concur