[Cite as *Murray v. Carano*, 2017-Ohio-8235.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| O. JOSEPH MURRAY, EXECUTOR OF ESTATE OF JOSEPH A. CARANO, DECEASED | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellant | : | Hon. John W. Wise, J. |
| | : | Hon. Craig R. Baldwin, J. |
| | : | |
| -vs- | : | |
| | : | Case No. 17-COA-005 |
| | : | |
| MELISSA CARANO | : | |
| | : | |
| Defendant-Appellee | : | O P I N I O N |

CHARACTER OF PROCEEDING: Appeal from the Ashland County Court of Common Pleas, Probate Division, Case No. 20151158A

JUDGMENT: AFFIRMED

DATE OF JUDGMENT ENTRY: October 17, 2017

APPEARANCES:

For Plaintiff-Appellant:

O. JOSEPH MURRAY
10 East Main Street
Ashland, OH 44805

For Defendant-Appellee:

JOSEPH P. KEARNS, JR.
P.O. Box 345
153 West Main Street
Ashland, OH 44805

*Delaney, P.J.*

{¶1} Plaintiff-Appellant, O. Joseph Murray, Executor of the Estate of Joseph A. Carano appeals the February 17, 2017 judgment entry of the Ashland County Court of Common Pleas, Probate Division.

## FACTS AND PROCEDURAL HISTORY

{¶2} Dr. Joseph A. Carano passed away on August 9, 2015. On November 18, 2015, Plaintiff-Appellant O. Joseph Murray, Executor of the Estate of Dr. Joseph A. Carano, filed a complaint for concealing assets pursuant to R.C. 2109.50 with the Ashland County Court of Common Pleas, Probate Division. In the complaint, Murray alleged he had good cause to suspect that Defendant-Appellee Melissa Carano had concealed assets belonging to the estate of Dr. Carano.

{¶3} On August 30, 2016, Melissa Carano appeared for a hearing before the trial court where she testified under oath concerning the allegations in the complaint for concealing assets. The trial court held a bench trial on January 10, 2017. At the conclusion of the trial, both parties submitted a written closing argument with a post-trial legal memorandum. The following facts were adduced at the bench trial.

{¶4} Dr. Joseph A. Carano was a physician who practiced in Warren, Ohio. Dr. Carano was married to Diane Carano, but they divorced. Dr. and Mrs. Carano had three children: Caren Dimario, Melissa Carano, and Kelly Eckrich. Dr. Carano and Mrs. Carano reconciled and lived together as husband and wife for a period of time, but the parties again separated. Dr. Carano and Mrs. Carano reconciled again and lived together until Dr. Carano's death.

{¶5}    In 2010, Dr. Carano retired from the practice of medicine because of health issues. Kelly Eckrich and her family moved in with Dr. and Mrs. Carano in Warren, Ohio due to her husband's unemployment. Eckrich's husband found employment in Ashland, Ohio and the family moved to Ashland. Dr. Carano made the down payment on a home in Ashland for Eckrich and the house was placed in the name of Eckrich and her husband. Eckrich was supposed to pay the mortgage on the home, but the mortgage was in the name of Dr. Carano.

{¶6}    Eckrich persuaded Dr. Carano and Mrs. Carano to move to Ashland and into her family's home. Mrs. Carano did not enjoy living in the Eckrich home, so Dr. Carano and Mrs. Carano purchased a condominium in Ashland. During this period of time, Eckrich's husband persuaded Dr. Carano to give him a Durable Power of Attorney. Eckrich's husband proceeded to misuse the Power of Attorney, depleting Dr. Carano's assets, running up large sums of credit card debt, and causing the condominium to be placed the husband's name. Dr. Carano was responsible for the mortgage payments on the condominium. Meanwhile, Eckrich failed to pay the mortgage on her own home and the home went into foreclosure. Eckrich found funds to purchase the home and became the title owner of the home.

{¶7}    Defendant-Appellee Melissa Carano resided in Florida and had a home in Ohio. She worked as a teacher, but had to retire because she had multiple sclerosis. She was not married. Her income was based on her disability income and some rental income. Dr. Carano often helped her with medical expenses and other expenses due to her situation.

{¶8} Melissa Carano became aware of her father's poor financial situation. She recommended her father complete his estate planning. Dr. Carano hired attorney O. Joseph Murray to complete his will in 2014. The will named Murray as Executor of Dr. Carano's estate. Murray also drafted a Power of Attorney that removed Eckrich's husband and named Melissa Carano and Lynn Livelsberger as Power of Attorney. Murray referred Dr. Carano to work with Lynn Livelsberger, a registered investment advisor, in order to help with his financial affairs.

{¶9} Melissa Carano then endeavored to remedy her parent's financial mismanagement. She paid her parents' bills. She canceled credit cards opened by Eckrich. Livelsberger was not as involved in that process; he rarely spoke to Dr. Carano, who at that time was bed-ridden and ill. There was no evidence that Dr. Carano was in poor mental condition. Melissa Carano either saw her father or talked to him by telephone almost every day.

{¶10} Dr. Carano had a checking account with Chase Bank. Mrs. Carano was also on the account. At the time Melissa Carano became involved in her parent's finances, the Chase Bank account had a zero balance. Melissa Carano deposited $5,000.00 of her own funds into the Chase Bank account. Dr. Carano's social security payments, monthly pension payments, and stock sale proceeds were deposited into the Chase Bank account. Copies of bank statements from the Chase Bank account from November 2014 to January 2016 were introduced into evidence.

{¶11} Melissa Carano testified her mother was an excessive spender. She was concerned that her mother would give money to Eckrich, even though Eckrich caused her parents' financial problems. After Dr. Carano's death, Mrs. Carano retained Livelsberger

to manage her finances. In order to prevent the misuse of her parents' funds by her mother, Melissa Carano transferred excess funds from the Chase Bank account to her personal savings account. When funds were needed for Dr. Carano's or Mrs. Carano's expenses, she would transfer the money to the Chase Bank account. Melissa Carano testified the expenditures out of the Chase Bank account were for the benefit of Dr. Carano and/or Mrs. Carano and her father was aware of all the expenditures made. Some of Melissa Carano's medical bills were paid out of the Chase Bank account.

{¶12} The largest deposit into the Chase Bank account was a stock sale in the amount of $98,789.00. Livelsberger testified that he and Melissa Carano discussed whether the stock sale proceeds should be used to pay down the mortgage on the condominium or whether the proceeds should be reinvested. Dr. Carano passed away shortly after that conversation.

{¶13} On July 7, 2015, $88,000.00 was transferred from the Chase Bank account to Melissa Carano's personal savings account. Melissa Carano testified her father instructed her to make the transfer. She stated her father wanted her to transfer the money to her savings account because Eckrich ruined her father's finances. Eckrich's home went into foreclosure and Eckrich never transferred the title of the condominium to Dr. Carano after she said she would. When Dr. Carano passed away, Eckrich would have the title to her home and the condominium, while Melissa Carano would have nothing. Even though Mrs. Carano was the beneficiary of Dr. Carano's estate, Melissa Carano testified her father would not have paid off the condominium mortgage with the stock sale proceeds because the mortgage payment was only $360 per month. If the mortgage was paid off, it would be no benefit to Mrs. Carano because Eckrich was the title owner of the

condominium. The trial court noted during the hearing that Dr. Carano's estate was worth approximately $500,000 and Mrs. Carano could use those funds to pay-off the condominium mortgage.

{¶14} Murray alleged Melissa Carano owed the estate $91,500.00. Melissa Carano used some of the funds to pay her father's funeral expenses. Melissa Carano estimated the balance remaining after expenses was $65,000.00.

{¶15} On February 17, 2017, the trial court issued its opinion and judgment entry. The trial court first found the evidence demonstrated Melissa Carano possessed assets that were at one time in the checking account of Dr. Carano. The trial court next found the evidence did not support a finding that those funds were concealed or embezzled by Melissa Carano. The trial court determined that based on the evidence of the family dynamics and the familial financial mischief, the evidence supported Melissa Carano's testimony that the funds placed in Melissa Carano's account were a valid inter vivos gift from Dr. Carano.

{¶16} The trial court dismissed the complaint for concealment of assets. It is from this decision Murray, as Executor, appeals.

## ASSIGNMENTS OF ERROR

{¶17} Executor raises three Assignments of Error:

{¶18} "I. THE TRIAL COURT ERRED AS A MATTER OF LAW BY MAKING A FINDING ON SELF-SERVING HEARSAY TESTIMONY THAT A GIFT HAD BEEN MADE TO DEFENDANT BY HER FATHER PRIOR TO HIS DEATH.

{¶19} "II. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO FIND AND RULE THAT THE POWER OF ATTORNEY GIVEN BY THE DECEDENT

SPECIFICALLY PROHIBITED THE GRANTING OF THE GIFTS BY THE ATTORNEY IN FACT.

{¶20} "III. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO RENDER JUDGMENT AGAINST THE DEFENDANT FOR THE SUM OF $91,500 PLUS A TEN PERCENT (10%) PENALTY."

## ANALYSIS

### I. Hearsay Testimony

{¶21} Executor argues in his first Assignment of Error that the trial court erred when it overruled his objections to allow Melissa Carano to provide hearsay testimony as to what Dr. Carano said about the transfer of the proceeds from the stock sale from the Chase Bank account to her personal savings account. Executor contends this testimony was inadmissible hearsay and the trial court impermissibly relied upon the testimony to find Dr. Carano made an inter vivos gift to his daughter.

{¶22} Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). An out-of-court statement is improper hearsay if it is offered for the truth of the matter asserted. *State v. Parker,* 2nd Dist. Montgomery No. 18926, 2002–Ohio–3920, ¶ 50. Statements made by a decedent fall under the general prohibition against hearsay. *Mancz v. McHenry*, 2012-Ohio-3285, 974 N.E.2d 784, ¶ 27 (2nd Dist.). Admission of the statements of one who is now deceased is governed by Evid.R. 804(B)(5), which states as follows:

The following are not excluded by the hearsay rule if the decedent is unavailable as a witness:

* * *

(5) Statement by a deceased or incompetent person.

The statement was made by a decedent * * *, where all of the following

apply:

(a) the estate or personal representative of the decedent's estate * * * is a

party;

(b) the statement was made before his death * * *;

(c) the statement is offered to rebut testimony by an adverse party on the

matter within the knowledge of the decedent * * *.

{¶23} The rule exists for the benefit of a representative of a decedent to permit

the decedent to "speak from the grave" to rebut the testimony of an adverse party. *Bobko*

*v. Sagen*, 61 Ohio App.3d 397, 409, 572 N.E.2d 823 (8th Dist.1989) quoting *Bilikam v.*

*Bilikam*, 2 Ohio App.3d 300, 305, 441 N.E.2d 845 (10th Dist.1982). The rule does not

exist for the benefit of a party who is opposing the decedent or his or her representative.

*Mancz v. McHenry*, 2012-Ohio-3285, ¶ 27 citing *Rasnick v. Lenos*, 12th Dist. Butler No.

CA2004-02-033, 2005-Ohio-2916, ¶ 14, fn. 1.

{¶24} A trial court's admission of evidence is reviewed for abuse of

discretion. *State v. Ahmed,* 103 Ohio St.3d 27, 2004–Ohio–4190, 813 N.E.2d 637, ¶

79. An abuse of discretion is more than an error of law or judgment; it is a finding that the

court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5

Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶25} During Executor's case-in-chief and on cross examination, Melissa Carano

was asked by Executor:

Q. On July 7th, you transferred to your savings account the sum of $88,000?

A. Correct.

Q. Why?

A. My father instructed me to.

(Tr. 36-37). Executor objected to any statement made by Dr. Carano. (Tr. 37). The trial court overruled his objection because the witness answered the question she was asked. (Tr. 37).

{¶26} Executor next asked Melissa Carano:

Q. Do you have any witness that heard your father make that statement?

A. No.

Q. Did – since we have gotten into this, did your father give you any reason why he wanted you to transfer that money into your savings account?

A. Yes.

Q. What?

A. The reason being that Kelly and Patrick, my sister and brother-in-law did nothing that we asked them to. They were letting the home that my father had paid for go into foreclosure, and they also still held the deed to a condo that they had no right to, and he, gifted them the house by then, and they said, they blackmailed my parents and said if you gift us the house, we will sign the deed over to the condo, which they never did, and my father was completely and utterly done.

Q. So he wanted you to hold that money until they gave the deed to the condo?

A. He said –

Q. That is all, thank you,

THE COURT: You may finish your answer.

A. He said because they are not signing the deed over and just going to accumulate that property as well, he said that you need – I am worried most about you. You have a disability and illness, and for your future, since you are not eligible for Social Security ever for your future for medical expenses and living expenses, put it – keep it, that is what he told me.

(Tr. 38-39). Executor did not object to this testimony.

{¶27} During the defense's case and on direct examination, Melissa Carano testified as to statements her father allegedly made to her regarding the transfer of the money from his account to her savings account. She was asked:

Q. Now, you were asked a question and then you answered it about what your father told you to do with the money, what was going on at that time?

A. He was upset that they had gifted them the house, the attorneys and Livelsberger, he told them that he wanted to prosecute, and they decided on their own that it would be just easier to gift it to them, and as in doing that, they would sign over the condo deed that was legally my father's. He put down the $42,000 as I had a letter from the bank, his bank, and he had been living in it, and he was paying the mortgage. And they did not do it.

Q. Okay.

A. So he was furious, he did not care what happened to either one of them,

plus they were keeping the grand kids away, so he did not have anything to

lose.

Q. So this $42,000, that as paid down by your dad on the condo?

A. Yep.

Q. And what was the understanding, whose name was that condo supposed

to be in?

A. It was supposed to be in my parents, it was their home, my dad paid for

it, they were living in it.

(Tr. 72-73). Executor raised a continuing objection to the hearsay statements made by

Dr. Carano. (Tr. 73). The trial court overruled the objection. (Tr. 73).

{¶28} In this case, the statements made by Dr. Carano constitute inadmissible

hearsay. Murray, as representative of Dr. Carano's estate, is a party to the action. The

statements were allegedly made before Dr. Carano's death. Melissa Carano, before the

court pursuant to a R.C. 2109.50 proceeding, is opposing the decedent's representative.

The testimony in this case arguably does not fall within the hearsay exception set forth in

Evid.R. 804(B)(5). We, however, affirm the trial court's rulings to allow Melissa Carano's

testimony as to her father's statements based on how the hearsay testimony was elicited

during the trial.

{¶29} We first find no abuse of discretion by the trial court to overrule Executor's

objection to Melissa Carano's testimony on cross-examination as to why she transferred

the money to her personal savings account. Executor called Melissa Carano to the stand

and induced her hearsay testimony when he asked her why she transferred the money

from her father's account to her savings account. She answered the question asked. Executor continued the line of questioning as to statements made by Dr. Carano when Executor next asked Melissa Carano, "Did your father give you any reason why he wanted you to transfer that money into your savings account?" She answered yes and Executor asked what the reason was. She answered Executor's question by explaining why her father wanted her to transfer the money into her savings account. We find Executor's line of questioning on cross-examination induced the hearsay testimony by Melissa Carano as to Dr. Carano's statements. The trial court properly overruled Executor's objections to her testimony.

{¶30} We further find no abuse of discretion to permit the admission of Dr. Carano's statements during Melissa Carano's direct examination. In *State v. Dunivant*, 9th Dist. Stark No. 2003CA00175, 2005-Ohio-1497, ¶ 12, the Ninth District Court of Appeals sitting by assignment for the Fifth District Court of Appeals held:

"Under the rule of curative admissibility, or the 'opening the door' doctrine, the introduction of inadmissible evidence by one party allows an opponent, in the court's discretion, to introduce evidence on the same issue to rebut any false impression that might have resulted from the earlier admission." *United States v. Whitworth* (C.A.9, 1988), 856 F.2d 1268, 1285. See, also, *United States v. Moody* (C.A.6, 1967), 371 F.2d 688, 693 ("With the door opened this widely in favor of [defendant], we cannot say that the District Judge's rulings in favor of appellee's proffered hearsay on the same subject was an abuse of judicial discretion or constituted reversible error."); *State v. Croom* (Jan. 18, 1996), 8th Dist. No. 67135, at *17 ("Invited

error would preclude a defense counsel who induces hearsay evidence on cross-examination from precluding further hearsay testimony on re-direct examination.").

{¶31} Executor invited the error when he induced Melissa Carano on cross-examination to provide hearsay evidence when he asked her why her father wanted her to transfer the money from his account to her personal savings account. Under the theory of curative admissibility, it was within the trial court's discretion to permit Melissa Carano to offer inadmissible evidence on the same issue to rebut or explain the hearsay evidence introduced by Executor.

{¶32} Executor's first Assignment of Error is overruled.

**II. Duties of the Power of Attorney and III. Manifest Weight of the Evidence**

{¶33} We address Executor's second and third Assignments of Error together because they both require an analysis of the evidence presented at trial. Executor contends in the second Assignment of Error that the trial court erred when it did not find that Melissa Carano was not permitted to give herself a gift by the terms of the power of attorney. Executor argues in the third Assignment of Error that the trial court went against the manifest weight of the evidence when it found Melissa Carano not guilty of concealing, embezzling, or conveying away assets of Dr. Carano's estate.

{¶34} This Court recently addressed a R.C. 2109.50 proceeding in *State v. Harmon*, 2017-Ohio-320, 72 N.E.3d 704 (5th Dist.). R.C. 2109.50 provides that the court or any interested party may file a proceeding in the probate court against any person alleged to have concealed, embezzled, conveyed away or in possession of monies or assets of an estate. A party who is found guilty of misappropriating estate assets can

have a judgment in the amount of the proceeds or assets issued against them along with a statutory penalty of 10%. R.C. 2109.52.

{¶35} Probate courts are courts of limited jurisdiction, and probate proceedings are thus restricted to those actions permitted by statute and by the Ohio Constitution. *Corron v. Corron*, 40 Ohio St.3d 75, 531 N.E.2d 708 (1988), paragraph one of the syllabus. An R.C. 2109.50 proceeding for the discovery of concealed or embezzled assets of an estate is a special proceeding of a summary, inquisitorial character whose purpose is to facilitate the administration of estates by summarily retrieving assets that rightfully belong there. *In re Estate of Fife*, 164 Ohio St. 449, 132 N.E.2d 185 (1956), paragraphs one and two of the syllabus; *Accord, Goldberg v. Maloney*, 111 Ohio St.3d 211, 2006-Ohio-5485, 855 N.E.2d 856, ¶ 23.

{¶36} R.C. 2109.52 empowers the probate court to conduct a hearing in the concealment proceeding at which the court may determine questions of title concerning the allegedly concealed, embezzled, or conveyed estate assets, to determine whether the person accused is guilty and, if so, to enter judgment against the person found guilty for the amount of the money or value of assets with a 10% penalty *Goldberg v. Maloney*, *supra* at ¶ 27. The complainant must show, by a preponderance of the evidence, that the defendant received money or other assets of an estate claimed to have come into her hands and that she concealed, embezzled, or conveyed it away. *In re Woods Estate,* 110 Ohio App. 277, 167 N.E.2d 122 (10th Dist.1959); *Accord, In re Gordon Estate*, 5th Dist. Richland No. 13–CA–77, 2014-Ohio-2087, ¶ 22. R.C. 2109.52 does not require the complaining party to establish fraud or undue influence. "[T]he inquiry under R.C. 2109.50 focuses on the ownership of the asset and whether possession of the asset is being

impermissibly concealed or withheld from the estate." *Gustafson v. Miller*, 5th Dist. Perry No. 15-CA-00008, 2015-Ohio-5515, ¶ 23 quoting *Wozniak v. Wozniak* (1993), 90 Ohio App.3d 400, 407, 629 N.E.2d 500.

{¶37} The Ohio Supreme Court has held that an action under the statute necessarily involves a charge of wrongful or criminal conduct on the part of the person accused. *In re Black's Estate*, 145 Ohio St. 405, 62 N.E.2d 90 (1945), paragraph two of the syllabus. "The word 'guilty' * * * implies wrongful possession. The provision for penalty implies that the person wrongfully in possession is kindred to ones who 'conceal, embezzle, or convey it away.' " *Longworth v. Childers*, 180 Ohio App.3d 162, 2008-Ohio-4927, 904 N.E.2d 904, ¶ 21 (2nd Dist.) quoting *Gregg v. Kent*, 12th Dist. Madison No. 137, 1938 WL 6739 (July 21, 1938). However, even though the proceeding under R.C. 2109.50 is quasi-criminal in nature, it does not involve the litigation of a criminal act. *Wozniak v. Wozniak*, 90 Ohio App.3d 400, 412, 629 N.E.2d 500 (9th Dist.1993); *In re Howard's Estate*, 79 Ohio App. 203, 213, 72 N.E.2d 502 (2nd Dist.1947) (interpreting former Gen.Code 10506–67); *In re Leiby*, 60 Ohio Law Abs. 245, 101 N.E.2d 214, 217 (2nd Dist.1951), reversed on other grounds, 157 Ohio St. 374, 105 N.E.2d 583 (1952). As has been noted,

> The purpose of the statute under which this proceeding was taken was not to furnish a substitute either for criminal proceedings for embezzlement or for a civil suit to recover judgment for money owing to an executor of an estate, but rather to provide a speedy and effective method for the probate court to discover assets belonging to the estate of a decedent and to promptly secure same for the purpose of administration.

*Leonard v. State, ex rel. Scott*, 3 Ohio App. 313, 314–315, 20 Ohio C.C. (N.S.) 340 (1st Dist.1914) (interpreting former Gen.Code 10673).

{¶38} The statute requires wrongful, fraudulent, or criminal conduct, but criminal intent is not always required. *State v. Harmon, supra* at ¶ 26 citing *In re Black's Estate*, 145 Ohio St. 405, 62 N.E.2d 90 (1945), paragraph two of the syllabus. "Culpability under R.C. 2109.52 turns upon whether the defendant has unauthorized possession of an estate asset or in some way has impermissibly disposed of an estate asset. *Goldberg v. Maloney*, 111 Ohio St.3d 211, 2006-Ohio-5485, 855 N.E.2d 856, ¶ 35, quoting *Wozniak v. Wozniak* (1993), 90 Ohio App.3d 400, 407, 629 N.E.2d 500." *State v. Harmon, supra* at ¶ 26. Mere possession, by itself, is an insufficient basis on which to make a finding of guilt under R.C. 2109.52. *Longworth, supra* at ¶ 21.

{¶39} There is no factual dispute that Melissa Carano possessed assets, specifically money, which once belonged to Dr. Carano. The issue before the trial court was whether Melissa Carano impermissibly concealed or wrongfully withheld the assets from the estate. The trial court found Executor did not establish by a preponderance of the evidence that Melissa Carano concealed or embezzled the assets. The trial court characterized the transfer of assets from Dr. Carano to Melissa Carano as an inter vivos gift. We find the trial court's judgment is supported by competent and credible evidence.

{¶40} In *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012–Ohio–2179, 972 N.E.2d 517, the Ohio Supreme Court clarified the standard of review appellate courts should apply when assessing the manifest weight of the evidence in a civil case. The Ohio Supreme Court held the standard of review for manifest weight of the evidence for criminal cases stated in *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997) is also

applicable in civil cases. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012–Ohio–2179, 972 N.E.2d 517. A reviewing court is to examine the entire record and determine "whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *Id.*; *see also Sheet Metal Workers Local Union No. 33 v. Sutton*, 5th Dist. Stark No. 2011 CA 00262, 2012–Ohio–3549. "In a civil case, in which the burden of persuasion is only by a preponderance of the evidence, rather than beyond a reasonable doubt, evidence must still exist on each element (sufficiency) and the evidence on each element must satisfy the burden of persuasion (weight)." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012–Ohio–2179, 972 N.E.2d 517.

{¶41} The only witnesses called to testify in this case were Melissa Carano, Lynn Livelsberger, and Executor. The uncontested evidence in this case demonstrated that due to financial misconduct by other members of Dr. Carano's family, Dr. Carano's personal finances were in disarray. Melissa Carano attempted to repair her father's finances for the benefit of Dr. Carano and Mrs. Carano. She utilized her own funds to assist her parents and thereafter attempted to manage her parents' finances with her father's income. She managed the flow of her parents' funds using her father's checking account and her personal savings account based on her understanding of her mother's uncontested proclivity for spending. Melissa Carano used some of her father's income to pay for her medical or personal expenses, but evidence was presented that her father had paid for these items in the past. The evidence showed a close relationship between Melissa Carano and her father.

{¶42} The trial court found that based on the evidence presented as to the family background, the financial misconduct, and the relationship between Melissa Carano and Dr. Carano, the transfer of the stock sale proceeds from Dr. Carano to Melissa Carano was a gift. "[A]lthough property that passed by inter vivos gift or transaction is not property of the estate retrievable by an executor under R.C. 2109.50, the probate court can determine that the inter vivos gift or transaction was invalid, in which case the property is an asset of the estate retrievable by R.C. 2109.50." *State v. Harmon*, 2017-Ohio-320 at ¶ 20 (5th Dist.) quoting *Harrison v. Faseyitan*, 159 Ohio App.3d 325, 2004-Ohio-6808, 823 N.E.2d 925 (7th Dist.), ¶ 36. The donee must show, by clear and convincing evidence that the donor intended to make a gift. *Fife v. Beck*, 164 Ohio St. 449, 456, 132 N.E.2d 185 (1956). The evidence in this case supports the trial court's finding that Dr. Carano intended to make a gift of the stock sale proceeds to Melissa Carano. Based on their relationship and Melissa Carano's assistance to her father, there is evidence that her father intended to help his daughter after she helped him.

{¶43} Executor argues that per the terms of the power of attorney granted to Melissa Carano by Dr. Carano, Melissa Carano had no authority to make a gift of Dr. Carano's property to herself. It has been held that attorneys-in-fact act outside the scope of their authority when they use a general, durable power of attorney to make gifts to themselves. *MacEwen v. Jordan*, 1st Dist. Hamilton No. C-020431, 2003-Ohio-1547, ¶ 11 citing *Brooks v. Bell*, 1st Dist. Hamilton Nos. A-9602497, C-970548, 1998 WL 165024 (Apr. 10, 1998). This self-gifting raises "a suspicion that undue influence may have been exerted" on the principal by the attorney-in-fact. *Id*. In the present case, however, there is no evidence that Melissa Carano used the power of attorney to make the gift of the stock

sale proceeds to herself. The competent and credible evidence showed that Dr. Carano told Melissa Carano to keep the funds for her benefit.

{¶44} Executor's second and third Assignments of Error are overruled.

**CONCLUSION**

{¶45} The judgment of the Ashland County Court of Common Pleas, Probate Division, is affirmed.

By: Delaney, P.J.,

Wise, J. and

Baldwin, J., concur.